(No. 15531.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, _vs._ LESLIE HARRINGTON _et al._ Plaintiffs in Error.

_Opinion filed December 19, 1923—Rehearing denied Feb. 12, 1924._

1. CRIMINAL LAW—_false representations practiced in confidence game may be proved by circumstantial evidence._ The gist of the crime of the confidence game is the obtaining of the confidence of the victim by some false representation or device, and the fact that the representations made were false may be proved by circumstantial evidence.

2. SAME—_fraudulent scheme in business transaction may constitute confidence game._ The confidence game statute covers any scheme whereby a swindler wins the confidence of his victim and then swindles him of his money or property by taking advantage of the confidence fraudulently obtained; and if the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction.

3. SAME—_evidence of other similar schemes is competent to prove guilty knowledge in a prosecution for confidence game._ In a prosecution of defendants for practicing the confidence game, where it is established that they obtained the money of the complaining witness by means of the confidence reposed in them, it is competent, for the purpose of showing guilty knowledge, to receive the testimony of other persons swindled by the defendants in similar schemes.

4. SAME—_when defendants charged with confidence game are responsible for representations of associates._ Where the evidence in a prosecution for the confidence game shows that the defendants joined in a common scheme to obtain the money of their victim, each of the co-conspirators is liable for the acts and representations of his associates.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. PHILIP L. SULLIVAN, Judge, presiding.

FORREST GARFIELD SMITH, and ROBERT E. TURNEY, (THOMAS E. SWANSON, and C. P. R. MACAULAY, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is prosecuted to review the judgment of the criminal court of Cook county finding plaintiffs in error guilty of obtaining the money of Alex Rutkauskas by means of the confidence game.

Rutkauskas testified that he was born in Lithuania; that he came to this country in 1909 and to Chicago in 1915; that he had known Anthony Lebecki about three years and Leslie Harrington and Peter Zilvitis about one year; that in March, 1921, Lebecki asked him if he wanted to make a good investment that would give a good return; that he told Lebecki that he had no money then but that he could come back in a week or two; that Lebecki returned and said that Harrington had an investment which would pay a return of fifty per cent in six weeks' time; that after further conversation Lebecki told him to try the investment and that he would make money, because Harrington bought and sold stock at a profit; that later he called at Harrington's office, at 36 South State street, Chicago; that he told Harrington that Lebecki had sent him; that Harrington said he was a broker and did business in Wall street, New York, and that he bought buildings, stocks and other things; that he saw Harrington again, and Harrington told him he had

a special open that would pay fifty per cent and for every
$100 invested he would receive $150 at the end of six
weeks; that he told two of his friends about the invest-
ment; that he invested $150 and his brother and John Sta-
pits each invested $100; that he gave $350 to Harrington,
who gave him a receipt; that Harrington said, "This is a
good investment; you will make lots of money;" that the
receipt given him was a note, which stated as the principal
the amount invested as well as the interest which was to
be paid; that the notes were paid when due; that he in-
vested his money and that of his friends with Harrington
from time to time; that Harrington always gave him re-
ceipts for the money invested; that he paid these receipts
or notes several times; that on one occasion Zilvitis said
that he had a special which would be paid in five weeks;
that when he took the money to the office to be invested,
the receipts or notes were sometimes given to him by Har-
rington and sometimes by Lebecki or Zilvitis; that Har-
rington, Lebecki and Zilvitis were in business together and
occupied the same office; that on one occasion Zilvitis and
Lebecki told him they had received a telegram from Har-
rington, who was in New York, which stated that he had
a special which would pay $30 for an investment for a
month; that he told his friends and collected their money
and delivered it to plaintiffs in error; that in December,
1921, Harrington called a meeting of those who had been
securing investments for him and told them that he had a
special in New York which would pay them one hundred
per cent, and those who had worked well for him and who
had brought in good business could invest as much as $500
while their friends could each invest $250; that Harrington
told them his associates in New York said that the special
would pay a good Christmas present; that large amounts
were invested in this special; that the notes given as re-
ceipts for these amounts were due in February, March and
April, 1922; that he saw Harrington in his office in the

North American building February 7; that he was in the building again February 11 but found that the office had been vacated; that he returned several times but did not see Harrington after February 7; that on several occasions when he visited the building he saw other Lithuanians looking for Harrington; that the amount he and his friends invested with Harrington totaled more than $30,000; that of this amount he himself lost $1200. Several other persons testified to similar transactions with plaintiffs in error, their losses totaling several thousand dollars.

Plaintiffs in error contend that the State has not proved that the statements made by them to their victims were false and that the story told by Rutkauskas does not establish a confidence game. The gist of the crime is the obtaining of the confidence of the victim by some false representation or device, (*People* v. *Peers*, 307 Ill. 539,) but the fact that the representations made were false may be proven by circumstantial evidence. (*People* v. *Strosnider*, 264 Ill. 434.) The returns which plaintiffs in error promised were many times larger than returns ordinarily expected from legitimate undertakings, and the natural inference to be drawn by any well-informed person would be that the proposition offered by plaintiffs in error was fraudulent. Plaintiffs in error represented to their customers that they had connections with Wall street and that they made these extraordinary returns by dealing in stocks and real estate. If these statements were true plaintiffs in error could have proven their truth. With nothing but the description of the scheme before them the jury were fully warranted in believing that the statements were false. The confidence game statute covers any scheme whereby a swindler wins the confidence of his victim and then swindles him of his money or property by taking advantage of the confidence fraudulently obtained. If the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction. Having established that plaintiffs in

error obtained the money of the complaining witness by means of the confidence game, it was competent, for the purpose of showing guilty knowledge, to receive the testimony of other persons swindled by plaintiffs in error in similar schemes.

Lebecki and Zilvitis contend that they were merely employees of Harrington, and that if Harrington's scheme was fraudulent they were ignorant of the fact. They did not testify on the trial and there is no proof in the record that they were mere employees. This defense was first presented on the motion for a new trial. It was not newly discovered evidence and the court properly refused to grant the motion. All the persons who invested money with them testified that all of plaintiffs in error were occupying the same office and that whichever one of them was in the office receipted for the money invested. Employees in the office testified that while they were employed there the three of them were working together and conducting the business jointly. The evidence of the People, standing uncontradicted in the record as it does, justifies the conclusion that plaintiffs in error conspired to obtain the money of people unskilled in business methods and unfamiliar with American customs. Having joined in the common scheme, each of the co-conspirators was liable for the acts and representations of his associates.

Complaint is also made of the argument of counsel for the People and of the rulings of the court in giving and refusing instructions. We have considered the contentions of plaintiffs in error on these points and find that the record is free from prejudicial error.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*