(No. 25329.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES MARTIN, Plaintiff in Error.

*Opinion filed December 15, 1939.*

HENRY B. EATON, and L. M. HARLAN, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, MICHAEL F. SEYFRIT, State's Attorney, and A. B. DENNIS, for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error brings this record here to review a conviction against him in the circuit court of Macoupin county on a charge of the confidence game. He was charged by indictment with having, on December 10, 1938, obtained a large amount of corn of the value of $230.12, the property of one Clarence Kime, by means and by use of the confidence game.

The facts appearing from uncontradicted evidence are that about November 14, 1938, the plaintiff in error began hauling corn from the elevator of the prosecuting witness, Clarence Kime, for one Wayne Peebles. Kime's elevator was located at Nilwood and Peebles lived in East St. Louis. Martin continued to haul corn for Peebles until about the first of December, during all of which time he made no settlement for the corn hauled. Starting about December 1, he obtained a load of corn from Kime and when he presented himself for the second load he paid for the load previously hauled. Kime testified that Martin told him his reason for paying for this corn was the illness of Peebles. It seems that from December 1 to December 9 Martin obtained from Kime seven or eight loads of corn and paid for each one when he got the next load. On December 9 he paid for the load he had last previously received and obtained another load, and on December 10 he called for still another load of corn. He told Kime that he had arrived at East St. Louis the night before too late to get a check for the corn but would return on the next morning and pay for both loads. He did not return as he agreed and did not pay for either of the last two loads.

There is but one question in the case, and that is whether these facts show Martin guilty of the confidence game. Even though he be guilty of another offense, it is necessary that the evidence show him guilty of the confidence game before the Confidence Game statute can be made applicable.

The gist of the crime of confidence game is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Harrington,* 310 Ill. 613; *People* v. *Peers,* 307 id. 539.) The Confidence Game statute was designed to reach the class of offenders known as "confidence men" who practice swindling schemes, as various as the mind of man is suggestive, upon unwary victims. The gist of the crime is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Peers, supra; People* v. *Perlmutter,* 306 Ill. 495; *People* v. *Gallowich,* 283 id. 360.) It covers any scheme whereby a swindler wins the confidence of his victim and then swindles him of his money or property by taking advantage of the confidence fraudulently obtained. If the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction, (*People* v. *Peers, supra; People* v. *Singer,* 288 Ill. 113; *People* v. *Keyes,* 269 id. 173;) but a swindling operation does not constitute the confidence game unless the element of confidence is present. (*People* v. *Peers, supra; People* v. *Rallo,* 293 Ill. 304; *People* v. *Santow,* id. 430.) It is not enough to show that there has been an obtaining of money by false pretenses. (*People* v. *Koelling,* 284 Ill. 118.) Broadly stated, any designed misrepresentation of an existing condition by which a party obtains goods of another, is a false pretense under the statutes making it a crime to obtain property by false pretenses. (*People* v. *Peers, supra; Jackson* v. *People,* 126 Ill. 139.) The essence of the crime of obtaining property by means of the confidence game is a trust reposed in the swindler and betrayed by him as a means of obtaining the victim's money or property. The moving cause for the victim's parting with his money or property and giving it to the accused must be the confidence reposed in the accused. *People* v. *Rallo, supra; People* v. *Gallowich, supra.*

Under the Criminal Code (Ill. Rev. Stat. 1939, chap. 38, par. 253, p. 1152) false pretense is defined as an intent to

cheat and defraud another, designedly, by the color of any false document or writing, or by any false pretense obtaining the signature of any person to a written instrument, or obtaining from any person money, personal property or other valuable thing. Any misrepresentation of a past fact knowingly made to induce another to part with his property, is a false pretense. *People* v. *Schneider,* 327 Ill. 270.

Under an indictment charging the confidence game, proof that the defendant is guilty of obtaining money by false pretenses, does not sustain the charge. It must further appear, as an element of the transaction, that the defendant obtained the confidence of the victim by false representation or device and swindled him. (*People* v. *Schneider, supra.*) There is no element of confidence game in the transaction involved in this case. There is no evidence that Martin, by any ruse, device or representation sought to or did fraudulently obtain the confidence of Kime. His contact with him was as an employee of Peebles and, according to Kime's testimony, Martin's fraud lay in making the false representation that Peebles desired more corn, when, in fact, plaintiff in error made that statement in order to get possession of the corn for himself. He paid for it with the exception of the last two loads. The only further representation which Kime testified Martin made to him was the excuse on December 10 for not paying for the corn obtained on that day and the day before, and his promise to pay for the two loads on the following day, which promise he did not keep.

It is clear that plaintiff in error was not proved guilty of the confidence game and the trial court erred in refusing to direct a verdict of not guilty on plaintiff in error's motion.

The judgment of the circuit court is, therefore, reversed.

*Judgment reversed.*