THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEE MORRIS GORDON, Defendant-Appellant.

First District (1st Division) No. 76-133

Opinion filed January 10, 1977.

James J. Doherty, Public Defender, of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman and James B. Davidson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Lee Morris Gordon (defendant) was found guilty of theft by deception (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b), (1)) and was placed upon probation for one year with restoration as a condition.

In his appeal to this court, he urges that the State failed to prove him guilty of the offense beyond a reasonable doubt; he was denied a fair trial when the trial judge acted as a prosecutor and because the trial judge refused to listen to a defense witness; and, finally, that the State failed to prove venue. In response, the State contends that the evidence established guilt of the crime beyond reasonable doubt; defendant raised no issue regarding conduct of the trial court in his motion for new trial so that the point is waived; absent waiver, the alleged trial errors were harmless beyond reasonable doubt and the evidence was sufficient to prove venue. Under our view of the case it will be necessary to consider only the first point raised by defendant. Since, in our opinion, no substantial question is presented, this opinion will be filed without oral argument. Ill. Rev. Stat. 1975, ch. 110A, par. 352(a).

Defendant lived across the street from the complaining witness, Charles E. Duncan. Duncan testified that he saw a "For Sale" sign on defendant's automobile. He asked defendant about the car and defendant gave him a price. Duncan stated that defendant told him the car had been financed by Bonlar Loan Company who had the title to the car. He also stated that defendant told him that he did not owe anything on the car but that the title was held up because it had not arrived from Springfield as a matter of regular rotation.

The complaining witness also testified that he went to the loan company with the defendant in October 1973. He stated that, on that

occasion, he was told that there was a security interest in the car and that the loan company had title to the car. He also testified that when he went to the loan office he did not find out about the loan on the car and that he did not receive that information until about four months later. He expected to get the title when he went to the loan company. However, he also testified that he knew the car had been financed. In further testimony he stated that he went to the loan office with the defendant but that he was not at all times in hearing distance of the conversation which defendant had with the loan clerk but that he only heard the clerk say that the title hadn't returned from Springfield. He further testified that he went to the loan company with the defendant for the purpose of paying off the loan and getting the title and that he had $550 in his pocket at that time for that purpose. He was going to give the money to the loan clerk when he heard the statement by the clerk that the title would have to come from Springfield. He testified further that he then went home without the sale because he had decided that he would not buy the car "if there was a note pending on the title."

The complaining witness also testified that the following morning he and defendant met on the street. They came together and got to talking about the car. On that day, after the meeting on the street, he gave defendant the agreed price of $550 and received possession of the car. The parties also signed a written agreement of some kind evidencing sale of the car. This agreement was identified and discussed at trial but was not offered or received in evidence. The complaining witness drove the automobile from October 1973 to February 1974. Since that time he did not drive the car because he was unable to obtain the title so that he could not purchase vehicle license plates. It is conceded by all parties that there is a balance due the finance company in some unascertained amount.

Defendant testified that he and Duncan went to the loan office together, located on Lawrence Avenue. The purpose of this was to pay off the balance of the lien due the finance company so that the title could be placed in Duncan's name. Defendant stated that he and the complaining witness were standing right there when he talked to the loan clerk. He asked how much the balance was and the clerk advised him in front of Duncan. Defendant said he wished to pay off the lien and advised the clerk that the money was then available. In defendant's opinion, the parties were standing together about one foot from the loan officer. The clerk then went to inquire about the title and advised the parties that it would not be returned from Springfield for three or four weeks.

A neighbor of defendant and Duncan testified that he went to the loan company with them. He saw them right in front of the loan officer's desk.

Defendant further testified that when the parties met the next day, Duncan told defendant that he wanted the car on his vacation and that he

did not believe that defendant would "beat him out of the money." Accordingly, defendant wrote out a written agreement and gave it to Duncan, together with the car, and Duncan paid defendant $550. Defendant stated that he gambled the money away and that he "got beat out of it" or "conned out of the money." Defendant conceded that he had promised to repay the money to Duncan as soon as he could start work. He stated that he had paid off some charges to the loan company and that the balance due was approximately $200 plus some late charges. The order for probation provides that defendant would pay $312.15 to Bonlar Finance Company at the rate of not less than $100 per month.

■■ The pertinent statute provides that a person commits theft when he "[o]btains by deception control over property of the owner" and "[i]ntends to deprive the owner permanently of the use or benefit of the property." (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b), (1).) It has been held in Illinois that this type of crime, formerly referred to as obtaining property by false pretenses, is predicated upon a " * * * misrepresentation of a past fact knowingly made to induce another to part with his property, * * *." (*People v. Martin* (1939), 372 Ill. 484, 487, 24 N.E.2d 380.) It has been similarly stated, " * * * that any false representation of an existing fact or condition by which the property of another is obtained is a false pretense under the law defining that crime." (*People v. Gruber* (1935), 362 Ill. 278, 286, 200 N.E. 483.) In its essence, the gist of this criminal statute is the same as the old and established requirement of actual fraud and misrepresentation in civil cases which is, "To be actionable, a false representation must generally relate to an existing or past event, not to a promise or prognostication concerning a future happening." *Sinclair v. Sullivan Chevrolet Co.* (1964), 31 Ill. 2d 507, 510, 202 N.E.2d 516. See also *Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 911, 299 N.E.2d 387, *leave to appeal denied*, 54 Ill. 2d 597.

■■ In the case before us, we are not satisfied that the proof supports the conviction beyond a reasonable doubt. The State has proceeded upon the theory that Duncan, the complaining witness, was entirely unaware of the lien upon the car. We find it impossible to agree with this. The testimony of the complaining witness is completely contradictory in this important area. First, he testified that he knew nothing about the lien and did not hear the conversation with the loan clerk. He also testified that he knew that the car was subject to an unpaid lien and that he and defendant journeyed to the loan office for the purpose of payment. The evidence shows that Duncan had the funds in his pocket and that he and defendant went out to the loan company office for the express purpose of paying the lien. We conclude that the complaining witness was fully aware of the existence of the lien.

For this specific reason, the authorities cited by the State are not applicable here. In *Keyes v. People* (1902), 197 Ill. 638, 64 N.E. 730, a conviction for obtaining money by false pretenses was affirmed. The defendant knew that certain chattels were subject to a mortgage but sold them to the complaining witness pursuant to a false representation that the property was free from liens. In *People v. Leonard* (1974), 18 Ill. App. 3d 527, 310 N.E.2d 15, *leave to appeal denied,* 56 Ill. 2d 589, this court, Fourth District, affirmed a conviction for theft by deception. Defendant made false representations to the complainant regarding his (defendant's) activities as a seller of television sets. Defendant represented that a set would be delivered to complainant in one or two days. Defendant obtained a check from the complainant for $300 with the name of the payee left blank. Defendant never took any steps to obtain the television set but instead he filled in his own name as payee, endorsed the check and kept the proceeds. These authorities simply accentuate the situation in the case before us in which we are compelled by the evidence to find that the complaining witness had full knowledge of the existence of the lien.

Also, it is important to note that the money was not transferred to defendant until the next day. The complaining witness himself testified that at first he did not wish to buy the car because of the "note pending on the title" but that he renewed negotiations because he needed the car for a vacation. He gave the money to defendant and received the automobile at that time. This does not appear from the testimony of the complainant but from the testimony of the defendant which the complainant does not contradict.

■■ A promise by defendant to pay the lien from the money which the complaining witness handed him could reasonably be implied. However, we cannot find from this record beyond a reasonable doubt that defendant did not intend to make payment of the lien when he accepted the money with which he was entrusted. Defendant testified, without contradiction, that he received an injury so that he was unable to work but that he did make certain payments on the lien. We cannot speculate regarding existence of guilt as to any other offense but we must consider only whether defendant was proved guilty beyond a reasonable doubt of the crime with which he is charged.

Judgment reversed.

McGLOON and O'CONNOR, JJ., concur.