THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID M. WURSTER *et al.*, Defendants-Appellants.

Third District   No. 79-427

Opinion filed April 29, 1980.

Michael A. Fleming, of Peoria, for appellants.

Bruce Black, State's Attorney, of Pekin (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendants, David and Linda Wurster, were convicted of theft by deception (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)(1)) following a jury trial. David Wurster was sentenced to 2 to 6 years in prison and ordered to make full restitution. Linda Wurster was sentenced to a 4-year term of probation upon condition that she serve a 9-week term of periodic imprisonment and make restitution to the best of her ability. Defendants appeal from both the convictions and the sentences.

At the trial in October 1978, it was shown that in connection with a back injury, David Wurster had prosecuted a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 et seq.). David Wurster and Caterpillar, his employer, entered into a settlement agreement with respect to this claim whereby Caterpillar paid him $21,199.20.

Dale Evans testified on behalf of the State that some time in late June or early July, 1976, he had a conversation with defendants during which they discussed the fact that David Wurster had been off work for several days, that he was in danger of losing his job, and that he wanted a little more time off to take care of other matters. The discussion involved an injury that David Wurster was going to say he had. Evans testified that David Wurster said he had a friend who would corroborate his claim that he had injured himself at work. Defendants telephoned Caterpillar to

402

schedule an appointment for David Wurster with one of its doctors. Linda Wurster suggested that if Evans "worked over" David before the appointment, his claim that he had injured himself would be more believable. Accordingly, Evans administered a beating to David Wurster, striking him several times about the lower back with his hand, which was wrapped in a towel. Evans testified that David Wurster went to Caterpillar's doctor later on the same day he was beaten. He also said that he had lived with defendants for a week or two prior to the beating, and during that time David Wurster had not appeared to be in pain.

Defendants, testifying on their own behalf, denied that David Wurster had been beaten by Evans. David testified that on June 30, 1976, while working for Caterpillar, he fell while dismounting a tractor inside a paint booth and hurt his back. Larry Putney, who was working nearby, testified that he did not see David fall, but that he heard a noise, turned around, and saw David on the floor. According to David Wurster, as a result of the fall, he stayed in bed until he went to see Caterpillar's doctor on July 6, 1976.

The jury found both defendants guilty as charged, and after sentencing, defendants perfected this appeal. Although numerous issues are presented for our consideration, we affirm.

I. THE INDICTMENT

Defendants challenge the sufficiency of the indictment on several grounds. The indictment charged:

"That on or about July 6, 1976 * * * DAVID M. WURSTER and LINDA S. WURSTER committed the offense of THEFT in that said Defendant(s) knowingly obtained, by deception, control over property of Caterpillar Tractor Company * * *, being money, specifically disability benefits, having a total value in excess of [$150], intending to deprive the owner permanently of the use and benefit of the property, in that he [sic], while employed by Caterpillar Tractor Company, represented to Caterpillar Tractor Company that he had been injured while working * * * on June 30, 1976, knowing that to be false * * *."

When the sufficiency of an indictment is challenged at trial, the standard on review is whether it sets forth the nature and elements of the offense charged in accordance with section 111—3(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 111—3(a)(3)). (People v. Lutz (1978), 73 Ill. 2d 204, 383 N.E.2d 171.) The nature and elements of the offense must be stated with enough specificity so that a judgment on the charge would act as a bar to further prosecution for the same offense, and so that the defendant is able to prepare a defense.

*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244; *People v. Miller* (1979), 75 Ill. App. 3d 775, 394 N.E.2d 783.

■■ Both defendants claim that, because the indictment did not allege that the money was obtained by a claim under the Workmen's Compensation Act, it failed to charge the offense with enough specificity to enable them to prepare a defense. We disagree. The indictment charged the theft of money in the form of disability benefits, and it described the false representation allegedly made by David Wurster to obtain the money. The language used sufficiently apprised defendants of the transaction which was the basis of the crime charged to enable them to prepare a defense. Citing *Simmons v. People* (1900), 187 Ill. 327, 58 N.E. 384, defendants also claim that the indictment was insufficient because it did not allege that Caterpillar relied on the false representation of David Wurster in paying the money. The *Simmons* case involved a prosecution for obtaining the signature to a deed by false pretenses. The supreme court reversed the defendant's conviction, stating: "The connection between the pretenses and obtaining the signature must appear either by a natural connection between them or by facts properly averred, so that the facts will lead to a necessary legal conclusion of the guilt of the defendant." 187 Ill. 327, 331.

■■ *Simmons* does not compel a reversal in the instant case. Reliance upon the false representation of the accused is not a separate element of the crime of theft by deception that must be specifically alleged, particularly where, as here, the connection is apparent between the misrepresentation by defendants and their acquisition of the disability benefits.

■■ Defendants also claim that the indictment was insufficient because there was no indication that the money was not paid voluntarily by Caterpillar, and also because the fraudulent prosecution of a claim under the Workmen's Compensation Act does not constitute theft as defined in section 16—1(b)(1). Both contentions are without merit. The language of the indictment clearly indicates that Caterpillar did not make a voluntary payment of the disability benefits, and a fraudulent Workmen's Compensation claim is just as much a theft by deception as any other scheme to obtain money by false pretenses. We note that the term "deception" is defined as to knowingly create or confirm an impression which is false and which the offender does not believe to be true. (Ill. Rev. Stat. 1977, ch. 38, par. 15—4.) A false workmen's compensation claim comes within that definition.

Finally, Linda Wurster contends that the indictment is insufficient because the factual allegations concerning the false representation refer to David Wurster only. She concedes that an accessory to a crime may

properly be charged as a principal (*People v. Heuton* (1971), 2 Ill. App. 3d 427, 276 N.E.2d 8), but cites *People v. Trumbley* (1911), 252 Ill. 29, 96 N.E. 573, in support of the proposition that the charge against the accessory "must be as full, complete and specific as a charge against one who commits the criminal act." (252 Ill. 29, 34-35.) She then argues that, without the factual allegations which refer only to David Wurster, the indictment was insufficient to charge her as a principal.

The *Trumbley* case does not support defendant's argument. In the first place, the indictment in that case charged both Jerry Trumbley and Grace Trumbley with rape but omitted a necessary allegation that Grace was a male, 17 years or older, as required by statute. Thus *Trumbley* is distinguishable on its facts from the case at bar. Secondly, under section 5—2 of the Illinois Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 5—2), an accessory may be charged and tried as a principal. (*People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.) We find the indictment sufficient to charge Linda Wurster as a principal.

## II. JURY SELECTION

Defendants next contend that the trial court erred in denying their motion to exclude from the panel of prospective jurors all nonunion employees of Caterpillar along with their spouses. In denying the motion, the trial court indicated that defense counsel could question prospective jurors who were employees of Caterpillar about the possible effect of the employment relationship on their verdict and that a challenge for cause would be granted where appropriate.

In *People v. Cole* (1973), 54 Ill. 2d 401, 413, 298 N.E.2d 705, 712, the Illinois Supreme Court stated:

> "At common law a juror was presumed to be biased and therefore disqualified if he was related to a party to the litigation through blood or sanguinity or through certain indirect personal relationships. Our statute (Ill. Rev. Stat. 1967, ch. 78, par. 14), like the statutes of many States, has not enumerated the common-law disqualifications in setting forth causes for challenge. However, there are certain relationships which may exist between a juror and a party to the litigation which are so direct that a juror possessing the same will be presumed to be biased and therefore disqualified. In such a case it is not necessary to establish that bias or partiality actually exists."

In *Coughlin v. People* (1893), 144 Ill. 140, 164, 33 N.E. 1, the Illinois Supreme Court indicated by way of dictum that at common law a juror was presumed to be biased if he was the servant of either party. Defendants argue that Caterpillar was a party in interest here because of the possibility that restitution might be ordered upon a conviction, and

therefore, nonunion employees, who generally may be fired at will by Caterpillar, should be presumed to be biased pursuant to the common-law rule. Defendants cite no Illinois cases holding that an employee-employer relationship between a juror and the victim of a crime is the kind of direct relationship which requires that bias be presumed. Under the circumstances we find that the trial court quite properly decided that the bias of nonunion employees of Caterpillar should not be presumed, but rather should be examined during the *voir dire*.

III. RULINGS ON EVIDENCE

Defendants attack numerous rulings of the trial court as to the admissibility of evidence. We will consider each alleged error as briefly as possible.

Evidence of a prior conviction of David Wurster was admitted to impeach his credibility. On May 30, 1978, David Wurster pleaded guilty to a February 28, 1977, delivery of a substance represented to be a controlled substance in violation of Section 404 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1404). Defendants say the trial court erred in determining, pursuant to the rule enunciated in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, that the probative value of the conviction was not substantially outweighed by the danger of unfair prejudice.

In *Montgomery*, the Illinois Supreme Court adopted proposed Federal Rule of Evidence 609, which permits the prior conviction of a witness to be admitted for purposes of impeachment if the crime involved was a felony, providing no more than 10 years has elapsed since his conviction or release from confinement, whichever is later, unless the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. Here the prior conviction was a Class 3 felony and occurred less than two years before defendant testified in the case at bar, so the conviction was properly admitted unless the trial court abused its discretion in determining that the probative value of the conviction was not outweighed by the danger of unfair prejudice.

In making such a determination, the court is to consider the nature of the crime of which the defendant was convicted, the nearness or remoteness in time of the conviction to the trial, the subsequent career of the defendant, and the similarity of the prior crime to the one charged. (*People v. Spates* (1979), 77 Ill. 2d 193, 205, 395 N.E.2d 563, 569.) In the instant case defendant committed a drug-related felony some 6 months after the theft, and he plead guilty to that felony about 5 months before trial. Under these circumstances, the trial court did not abuse its discretion in admitting the evidence of the prior conviction.

Defendant Linda Wurster next contends that the trial court improperly admitted evidence of other crimes committed by her. Dale Evans was permitted to testify about a conversation he had with Linda in the fall of 1976 in which she suggested that he contact a certain woman to set up a "slip and fall" scheme. According to the proposed scheme Evans would go into a grocery store and break something that would leave the floor wet and slippery. The woman would pretend to fall on the slippery floor and then would sue the store to recover for feigned injuries. Evans testified that Linda told him she had participated in such a scheme once before.

■ Evidence of other offenses committed by a defendant is not admissible to show his criminal disposition. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506), but is admissible for other purposes, including to prove a common scheme or design. (*People v. Kamsler* (1966), 67 Ill. App. 2d 33, 214 N.E.2d 562.) One factor to be considered in determining the admissibility of such evidence is the period of time between the other offenses and the offenses charged. (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 321, 368 N.E.2d 608, 615, *cert. denied* (1978), 439 U.S. 837, 58 L. Ed. 2d 134, 99 S. Ct.122.) In the instant case Evans' testimony tended to show that a short time after administering a beating to David Wurster to help falsify an injury and before his claim under the Workmens' Compensation Act had been settled, Linda Wurster suggested that Evans participate in a fraudulent personal injury claim of a type similar to the one alleged in the indictment. Under these circumstances, Evans' testimony was admissible to show a common plan or scheme. See *People v. Hill* (1968), 98 Ill. App. 2d 352, 240 N.E.2d 801, *cert. denied* (1969), 395 U.S. 984, 23 L. Ed. 2d 773, 89 S. Ct. 2150.

Defendants next assert that the trial court committed reversible error when it excluded an irrelevant certain testimony of Dale Evans. During cross-examination Evans testified that in addition to the beating of David Wurster which he described during direct examination, there had been a second beating. Defense counsel then inquired, "Did you tell the State's Attorney about the other time?" and Evans replied, "Yeah." The trial court sustained the State's objection to this question and answer on the grounds of relevancy.

■■ Evidence is relevant if it tends to prove a fact in controversy or renders a matter in issue more or less probable. (*Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768.) The trial judge has a wide discretion in ruling on issues of relevancy and may exclude evidence which he determines to be of little probative value. (*People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856.) In the instant case, while the circumstances of the second beating might be relevant to show how David Wurster received his injury, the relevancy of whether Evans told the State's

Attorney about the second beating is obscure. We hold that the trial court did not abuse its discretion in excluding this evidence.

The next error urged by defendants concerns the State's use of David Wurster's grand jury testimony. Section 112—4 of the Code of Criminal Procedure of 1963 provides in part:

> "Before any testimony is given by [a person subpoenaed by the grand jury against whom the State's Attorney is seeking a Bill of Indictment], he shall be informed that he has the right to refuse to answer any question that will tend to incriminate him, that anything he says may be used against him in a court of law, that he has the right to be accompanied and advised of his rights by counsel, and that he will have counsel appointed for him if he cannot afford one." (Ill. Rev. Stat. 1977, ch. 38, par. 112—4(b).)

When David Wurster appeared before the grand jury, he was not advised of these rights until after he had given a substantial amount of testimony. The State realized its mistake, advised him of his rights, and started over.

The trial court permitted the State to use that portion of Wurster's grand jury testimony given after he had been advised of his rights but only for purposes of impeachment during cross-examination of David Wurster. Defendants say that under the circumstances Wurster cannot be held to have waived his rights and, hence, use of his grand jury testimony for any purpose was improper.

In *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, the United States Supreme Court held that the Federal constitution does not prohibit the State from using a defendant's statements for impeachment even though they would be inadmissible in the State's case-in-chief under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Although in the instant case defendants have challenged the introduction of David Wurster's prior statements on the basis of section 112—4 of the Code of Criminal Procedure of 1963, rather than *Miranda*, we find the rationale of the *Harris* case applicable. Whatever protection is afforded a defendant by section 112—4, like that offered by *Miranda*, "cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (*Harris*, 401 U.S. 222, 226, 28 L. Ed. 2d 1, 5, 91 S. Ct. 643, 646.) Inasmuch as David Wurster's grand jury testimony was used only to impeach his credibility, whether he had waived his rights under section 112—4 when he was advised of them is irrelevant.

The next issue concerns defendants' objections to part of Evans' rebuttal testimony. Linda Wurster had testified that in May of 1977, except to return his calls to her, she telephoned Dale Evans only once. In rebuttal, when Evans was asked how many times she called him at his mother's residence that month, he said, "Twenty, maybe 30 times." The

trial court overruled defense counsel's objection that the proper foundation had not been laid for that question and answer. During cross-examination Evans stated that he knew Linda had called that many times because he was told that she did. Defense counsel again objected arguing that this testimony was inadmissible hearsay. The trial court, noting that the hearsay objection was not made originally, allowed the State to reopen for further foundation. After the State questioned Evans further about the telephone calls, the court sustained defendants' objection and instructed the jury to disregard the hearsay testimony. Defendants maintain that their original objection should have been sustained before the hearsay was presented to the jury three times. We think that if any such error was committed, it was rectified by the court's instruction to the jury to disregard the testimony.

Defendants next argue that a prior consistent statement of Dale Evans was erroneously admitted. The defense had attempted to show that Evans had a motive to testify falsely because he wanted Linda Wurster to leave David and live in Denver with him, and that Evans had threatened to harm David. Linda Wurster testified that Evans' threats did not begin until May of 1978, and in rebuttal Special Agent Deen testified that in February of 1977, Evans made a statement which was consistent with his trial testimony.

Defendants acknowledge that prior consistent statements are admissible to rebut an inference of a motive to falsify when the statements were made before the motive came into existence. (*People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) They contend, however, that such statements are not admissible unless the person who made them testified as to their substance. Defendants have cited no authority, and we are aware of none, which supports that proposition.

Defendants also contend that Special Agent Deen's testimony concerning the substance of Evans' prior consistent statement was inadmissible hearsay. Since Deen's testimony was not admitted to prove the truth of Evans' prior statement, but rather to prove that Evans made the statement before he supposedly had a motive to falsify, it was admissible. (*People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) The jury was properly instructed about the limited purpose of this testimony, and no error was occasioned by its admission. See *Howell*, 53 Ill. App. 3d 465, 471.

Defendants also claim they were not proved guilty beyond a reasonable doubt since the State was required to prove that David Wurster's injuries were the result of the beatings administered by Evans and not of a fall from a tractor at work. They say the State failed to meet its burden because no evidence was introduced to show that Wurster did not fall at work, and no evidence was presented to rebut the conclusion of

defendants' medical witness, that Wurster's injuries might have been caused by such a fall. They also contend that Evans' testimony concerning the beatings was suspect because he was an alleged accomplice.

■■ We find these arguments unpersuasive. First, the State did introduce evidence that Wurster did not fall from a tractor at work. When Evans was asked whether he had been involved in any conversation concerning any witness to the alleged accident at work, he testified that David Wurster told him he had a friend at work who would go along with whatever he said. David Wurster testified that he did not report the alleged accident until 6 days after it occurred despite the fact he was "in a lot of pain" the day it occurred, while Evans said David showed no signs of pain. Second, defendants' medical witness testified that David Wurster's injuries could have been caused in various ways. Third, we note that a conviction may be based on the uncorroborated testimony of an accomplice if it proves the defendant's guilt beyond a reasonable doubt. (*People v. Johnson* (1925), 317 Ill. 430, 434, 148 N.E. 255.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and should not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Sufficient evidence was presented in the instant case to support the convictions.

IV. JURY DELIBERATIONS

■■ Defendants contend that the jury improperly considered matters not in evidence. At the hearing on defendant's post-trial motion one of the jurors testified that during deliberations one or more Caterpillar employees on the jury remarked that they recalled from their own observations that the paint booth where Wurster allegedly fell from the tractor was an open-end or drive-through booth. Defendants maintain that these remarks improperly impeached the credibility of two key defense witnesses, David Wurster and Larry Putney, who testified that it was a closed-end or dead-end booth. The Illinois Supreme Court recently considered a similar argument in *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656. At Holmes' jury trial for armed robbery, it was established that the complainant had pointed out to the police shoe prints which her assailant had left in the snow. Testimony was presented describing those shoe prints as well as shoe prints which the arresting officers caused the defendant to make. The court reversed the conviction because several members of the jury had gone to a shoe store and examined the heels of various shoes. In so doing, the court stated:

"We do not interpret [*People v. Rivers* (1951), 410 Ill. 410, 102

N.E.2d 303] to mean, nor do we now hold, that every instance in which extraneous or unauthorized information reaches the jury results in error so prejudicial as to require reversal. Here the extraneous information improperly brought to the jury's attention was in the nature of evidence crucial to the question of defendant's identification * * *." (69 Ill. 2d 507, 519, 372 N.E.2d 656, 661-62.) In the instant case the extraneous information considered by the jury did not involve evidence related to guilt but a strictly collateral matter, the structure of the paint booth. The possibility that defendants were prejudiced is too insignificant to justify a reversal of their convictions.

Defendants also assign as error the failure of the trial court to grant their several motions for mistrial made during the course of jury deliberations. They argue that these motions should have been granted because the deliberation time was excessive; the bailiff improperly communicated with members of the jury; at least one of the jurors felt sick during part of the deliberations; and the jury might have confused their deliberations on whether they wanted to break for the night and go to a motel with their deliberations on the case.

■■ Defendants have cited no authority indicating that a mistrial should be granted for any of the reasons stated. The question of what is a reasonable length of time for the jury to deliberate is a matter within the discretion of the trial court. (*People v. Allen* (1977), 47 Ill. App. 3d 900, 365 N.E.2d 460.) That discretion was not abused in this case. It is clear from the record that defendants were not prejudiced by the bailiff's communications, the juror's temporary illness, or the deliberations concerning sleeping accommodations, and, therefore, the motions for mistrial were properly denied. See *People v. Veal* (1978), 58 Ill. App. 3d 938, 968, 374 N.E.2d 963, *cert. denied* (1979), 441 U.S. 908, 60 L. Ed. 2d 378, 99 S. Ct. 2001.

V. SENTENCES

Defendants challenge the sentences imposed. Both defendants were sentenced under the "old" sentencing law.

■■ David Wurster contends that in determining that neither probation nor the minimum term of imprisonment were appropriate in his case, the trial court improperly considered that he had "[committed] the offense for compensation." He cites no authority indicating that such a consideration would be improper in the instant case. In any event, since the only compensation David Wurster received was the money that was the subject of the theft, it is clear that the trial court's comments concerning compensation reflected nothing more than a proper consideration of the nature and circumstances of the offense. See Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(4).

■■ Finally, both defendants contend that the court abused its discretion by requiring them to make restitution because evidence was before the court tending to show that they were indigent. Again, no authority is cited. In any event, a review of the record indicates that an order of restitution was appropriate and that the trial court did not abuse its discretion in this regard.

For the reasons stated above, the convictions and the sentences entered by the Circuit Court of Tazewell County are affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.