THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DIXIE L. McBRIDE, Defendant-Appellant.

Fifth District   No. 80-64

Opinion filed January 21, 1981.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, and Myron A. Hanna, law student, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

On October 12, 1979, the defendant was charged by information in the Circuit Court of Madison County with the offense of theft over $150. She entered a plea of not guilty, demanded a trial by jury, was tried, convicted and sentenced to probation for a period of one year.

In the summer of 1979, the defendant was a public aid recipient. On

or about July 16, 1979, she contacted the office of the Department of Public Aid in Alton, Illinois, informing a Mr. Stout, an employee thereof, that her check for July of 1979 had not been received. On July 18, 1979, she went to the office and had a conversation with Mr. Stout. She filled out and signed a form entitled "Stop Payment Request and Recovery Agreement." One of the conditions of the "stop payment" request was that the defendant agreed "To immediately notify the Department of Public Aid should such original warrant at any time hereafter come into my possession or control. I will return it immediately and I agree not to endorse and not to cash said warrant." According to Mr. Stout, she was told that it would be a week to 10 days before the replacement warrant would arrive. On July 20, 1979, she received a warrant, and cashed it on or about that date. Another warrant was received and cashed on or about July 30, 1979. On August 18, 1979, she received and cashed another public aid warrant. All warrants were payable to defendant.

The defendant was interviewed by Deborah Morgan, an employee of the Department, concerning the reported nonreceipt of the original warrant. Morgan testified that the defendant told her she "knew I was not supposed to get two checks each month but I needed the money."

The defendant testified that she cashed both warrants in July but was of the opinion that the second warrant was her August public aid check. She further testified the day after she cashed the second warrant, she went to her mother's home to pay her mother for a phone bill. When her mother asked her where she got the money, she told her it was from her August check. She testified that on the same day she saw a Joan Austin, but objections to conversations with Miss Austin were sustained by the court. However, she testified she told a Ms. Morgan she thought the first check she received was the replacement check and the second check was her August check. On cross-examination the People were allowed to introduce, over defendant's objection, a warrant dated August 15, 1979, for the sum of $214 endorsed by Dixie L. McBride on or about August 18, 1979.

The defendant made an offer of proof that if Dorothy McBride were called as a witness, she would testify that Dixie McBride told her she got the money to pay Dorothy McBride for two long distance phone calls from her August check; further, that if Joan Austin were called as a witness, she would testify that she heard Dixie McBride tell Joan Harris she had gotten the money for Tony McBride's clothes from her August check and that these conversations all took place on the same day. The offer was denied by the court.

The defense attorney's theory was that the statements were offered to rebut the charge of recent fabrication.

The defendant raises four issues on appeal:

a. She was not proven guilty of deceit beyond a reasonable doubt.

b. Exclusion of defendant's prior consistent statements denied her a fair trial.

c. Defendant's statements to Dorothy McBride and Joan Austin should have been admitted as declarations reflecting defendant's state of mind.

d. The defendant was unfairly prejudiced by the admission of irrelevant evidence that had not been previously disclosed to the defendant.

The defendant is charged under section 16—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(b)), which states:

"A person commits theft when he knowingly:

&ast; &ast; &ast;

(b) Obtains by deception control over property of the owner; [and]

&ast; &ast; &ast;

(1) Intends to deprive the owner permanently of the use or benefit of the property; &ast; &ast; &ast;."

Deception as defined by the statute means "knowingly to fail to correct a false impression which the offender previously has created or confirmed." Ill. Rev. Stat. 1979, ch. 38, par. 15—4(b).

The essential elements which must be proved to sustain a charge of theft by deception are that the named person was the owner of the specific property, that the accused knowingly obtained by deception control over that property, and that the accused acted with intent to permanently deprive the named owner of the use and benefit of that property. *People v. Decker* (1974), 19 Ill. App. 3d 86.

The defendant argues that no evidence was presented that would establish an act of deception because the defendant believed the first warrant she received was the replacement warrant and the second warrant was the August warrant. The evidence shows that the defendant was receiving public aid benefits for eight months prior to July 1979; that the payments were supposed to come on or about the 16th day of each month; that she was to receive one check each month; that some checks came late and a couple of times the warrants arrived early.

When the July check failed to arrive on the 16th, she called the public aid office in Alton. She also called on the 17th of July. When the check failed to arrive on the 18th of July, she went to the office and signed the stop payment and recovery request. By signing this agreement, she stated she had not received the warrant, that it was not endorsed, and further, she agreed that if she did receive the warrant, she would return it immediately.

When the defendant signed the agreement, she was instrumental in creating the impression that the July warrant was lost, stolen or destroyed.

This, as subsequent events showed, was false. When she received the July warrant and endorsed it, she failed to correct the false impression. She received proceeds from a check she was not lawfully entitled to under the terms of the agreement with the Public Aid Department.

We are of the opinion that the People have sustained their burden of proving the defendant guilty beyond a reasonable doubt of theft by deception as alleged in the information.

The defendant also complains about certain evidentiary rulings made by the court. During direct examination of the defendant, she testified that she told her mother and Joan Austin that she had received the second check. The defendant had gone to her mother's home to pay her mother for phone bills that she owed her mother. She testified her mother asked her where the money came from and "I told her it was my August check." She was then asked if she had paid the phone bill and an objection was made, "What she used her Public Aid checks for—."

At this time an off-the-record discussion was held; then, the defendant was questioned about whom she had seen that day and discussed the second check with. The court sustained an objection to repeating Miss McBride's statements. On redirect examination the defendant was permitted, without objection, to testify that she did not think the second check was a replacement check and that she told this to her mother and to Joan Austin.

At the close of the evidence the defendant made an offer of proof which was denied by the court, that if Dorothy McBride were called as a witness, she would testify that on one of the last days of July or early days of August, Dixie McBride came to her home and during their conversations told her that she had received her August check and that Joan Austin would testify on the same day she heard defendant tell a Joan Harris that she had purchased clothes for the defendant's son from her August check. The offer was presented to rebut the charge of recent fabrication.

■■ Apparently the court and the People viewed Dixie McBride's in-court testimony concerning her out-of-court statements to her mother and Joan Harris as hearsay. We have a different view. She was not offering to testify to a statement made by a third party, but as to her statement made to a third party. Therefore, the fundamental basis for excluding the hearsay evidence, lack of opportunity for cross-examination, is absent. *People v. Clark* (1972), 52 Ill. 2d 374.

■■ As a general rule, proof of statements made by a witness out of court, harmonizing with in-court testimony are inadmissible, but where it is charged that the story is a recent fabrication and that the witness had some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist or before the effect of the account could be foreseen is admissible. (*Lyon v. Oliver* (1925), 316 Ill.

292.) Before the exception to the general rule that prior consistent statements are not admissible comes into play the statement must be made when the motive to fabricate did not exist.

In the case at bar, the defendant's statement was not made before the motive existed. The defendant reported the nonreceipt of the check on July 18, 1979, and filled out the necessary papers to receive a replacement. She received the original warrant within two days thereafter and another warrant within two weeks. The so-called consistent statements were made shortly after cashing the second warrant. At that time the motive to fabricate was in existence. The trial court was correct in its ruling on the admissibility of the prior consistent statements of the defendant and of the witnesses McBride and Austin.

■■ The defendant testified that she thought the replacement check cashed on or about July 27, 1979, was her August check. Another check was received by the defendant on or about August 18, 1979, and cashed by the defendant. This warrant was received by the defendant in the time frame she would normally receive her public aid warrants. The August check was admissible to rebut the defendant's contention that the replacement warrant was the August check. Under the circumstances of this case the defendant should have known she was not entitled to three public aid warrants within a one-month period.

Although the defendant's evidence was not convincing, our review of the record shows that the trial court gave the defendant ample opportunity to present her theory of the case. The record presents a question of fact to be determined by the jury (the fact-finder). It is the function of the jury to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Foster* (1979), 76 Ill. 2d 365.) As a general rule, reviewing courts will not substitute their judgment for that of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296.

We have considered the other issues raised by the defendant and find them without merit.

Accordingly, we affirm.

Affirmed.

JONES and HARRISON, JJ., concur.