THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY E. DAVIS, Defendant-Appellant.

Second District   No. 83—1139

Opinion filed March 8, 1985.

SCHNAKE, J., dissenting.

G. Joseph Weller and Nicholas J. Kritikos, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:
Defendant, Larry E. Davis, was convicted of theft by deception (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) after a jury trial. He was sentenced by the circuit court of Winnebago County to a term of five years' imprisonment. He contends his conviction should be reversed because the evidence failed to show that he obtained the property from the alleged victim by deception. He suggests the evidence may have established the offense of attempt but that he was not so charged.

The evidence showed that in February 1983 defendant had been

imprisoned in the Sheridan Correctional Center. He became acquainted with Curtis Lee Cottrell, a Department of Corrections counselor at the prison. He also met Kenneth Sanders, an inmate at Sheridan.

In March of 1983, Cottrell informed defendant that he could obtain defendant's release from the Department of Corrections through his influence. Defendant was in fact released on May 6, 1983. He had served a little over eight months in prison. He had originally been sentenced to a term of three years.

Immediately following defendant's release, Cottrell approached defendant, claiming that defendant was indebted to him for his release and demanding repayment. He informed defendant that he had the power to revoke his parole and to send him back to the Department of Corrections and threatened to do so unless defendant gave him $2,000, which was supposedly the amount Cottrell had expended for defendant's release.

Since defendant could not obtain the money, Cottrell proposed an alternative plan. Cottrell and defendant would approach inmates in the Department of Corrections and propose obtaining their early release for money. Defendant accordingly contacted Kenneth Sanders at Sheridan and obtained the name of Ethel Roberts.

Ethel Roberts was a friend of Kenneth Sanders. She took care of the rentals of his house and apartments while he was in prison. Near the middle of May defendant made a number of phone calls to Roberts advising her that he could obtain Sanders' release from the Department of Corrections for $4,000.

Roberts knew that defendant was a "phony." She did not believe he could obtain an early release for Sanders. On the advice of her attorney she contacted the Illinois Department of Law Enforcement (IDLE). Agent Ron Andrei of IDLE came to see her on May 18, 1983.

On Andrei's advice, Roberts arranged to meet defendant at the Clock Tower Inn in Rockford. She told defendant that she would be with her son-in-law—who would in fact be Agent Andrei.

On May 20, 1983, Andrei picked up Roberts at her house and took her to his office. He briefed Roberts. He would pretend to be her son-in-law, named Michael, and he would be carrying the supposed payment. Roberts was wired with a number of microphones placed on her person. Andrei prepared a white envelope, containing $1,150 from the IDLE "official advance fund," prerecording the serial numbers of the bills.

Andrei and Roberts drove to the Clock Tower Inn parking lot, parking near an IDLE van which contained the video equipment

which was to tape the meeting with defendant. Other IDLE agents were deployed in the area.

Cottrell had driven defendant to the Clock Tower Inn in his automobile. Cottrell stayed in the car, slouching down while defendant left the vehicle and walked into the foyer.

Andrei and Roberts met defendant in the hallway of the Clock Tower Inn. Roberts introduced Andrei as her son-in-law. The three of them went to the area of Andrei's car in the parking lot. Their conversation was recorded and the meeting at the parking lot was videotaped.

At the parking lot, defendant told Roberts and Andrei that he could obtain a full pardon for Kenneth Sanders from Governor Thompson, through his contact, his uncle Sam Perry, a Federal judge, for $5,000. In his role as Roberts' son-in-law, Andrei pressed defendant for detailed explanations of the process, expressing concern over Roberts' money.

When Andrei thought he had enough for an arrest he removed his vest, a prearranged signal for other officers in the area to come in and arrest defendant. When Andrei saw Agent Crow drive up in response to the signal, he handed defendant the white envelope with the money. At that point defendant was arrested by Agent Crow. Andrei then took back the envelope from defendant's hand.

Cottrell was taken into custody at the scene and transported to the IDLE offices for questioning. No criminal charges were brought against Cottrell. An administrative hearing was held at the Sheridan Correctional Center wherein Cottrell was charged with socializing with defendant, failing to report his second income, and falsifying his original application to the Department of Corrections. He was suspended for 30 days and recommended for discharge.

The trial court entered directed verdicts of acquittal on two bribery counts at the close of the State's evidence. The trial court denied defendant's motions for directed verdict on the theft by deception charge at the close of the State's evidence and at the close of all the evidence.

The jury was instructed on the offense of theft by deception. The State tendered the sole instruction given on "deception":

> "The word 'deception' means to knowingly create or confirm another's impression which is false and which the defendant does not believe to be true."

Defendant's instructions on the offense of deceptive practices as a lesser included offense were also refused.

The jury found defendant guilty of theft, and the trial court de-

nied defendant's motion for a new trial. Defendant was sentenced to five years' imprisonment.

■ Defendant asserts that the offense of theft by deception under section 16—1(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) was formerly the offense of obtaining property by false pretenses (*People v. Gordon* (1977), 45 Ill. App. 3d 282, 359 N.E.2d 794), and that the *sine qua non* for the transfer of property is deception. (*People v. Jensen* (1982), 103 Ill. App. 3d 451, 454, 431 N.E.2d 720, 722.) He maintains that under the earlier form of the offense, reliance on the deception by the victim had to be alleged and proved. (*Simmons v. People* (1900), 187 Ill. 327, 332.) He acknowledges, however, that reliance need not be separately alleged. (*People v. Wurster* (1980), 83 Ill. App. 3d 399, 403, 403 N.E.2d 1306, 1310.) Nevertheless, he argues that deception was not the instrumentality by which defendant obtained the money, but, rather, it was the State's desire to make an arrest. Defendant further contends that no representation of defendant induced the undercover agent to part with the agency's money. Thus, the thrust of his argument is that the owner of the money must be proved actually to have been deceived. We disagree.

The statute under consideration provides:
"A person commits theft when he knowingly:
　　* * *
(b) Obtains by deception control over property of the owners; *** and,
(1) Intends to deprive the owner permanently of the use or benefit of the property ***." Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1).

As did the defendant in *People v. Wurster* (1980), 83 Ill. App. 3d 399, 403 N.E.2d 1306, the instant defendant relies on *Simmons v. People* (1900), 187 Ill. 327, for the requirement that the State prove there was reliance upon defendant's false representation in paying over the money to defendant. *Simmons* involved a prosecution for obtaining the signature to a deed by false pretenses. The supreme court reversed the defendant's conviction, stating that the "connection" between the pretenses and obtaining the signature must appear either by "a natural connection between them" or by facts properly averred, so the facts will lead to a necessary legal conclusion of the guilt of the defendant. (187 Ill. 327, 331.) We observe, as did the court in *Wurster*, that *Simmons* does not compel a reversal in the instant case. Reliance upon the false representation of the accused is not a separate element of the crime of theft by deception that must be specifically

alleged. Here, in contrast to *Simmons,* the connection between defendant's deception and the paying over of the money, whether by the intended victim or her agent or surrogate the Department of Law Enforcement, is, to use the language of *Simmons,* "a natural connection." That is, it is beyond argument that the paying over of the money to defendant was amply proved to have been connected to and the result of his intention and his deception.

■ Defendant has cited no authority for his contention that the State's interdiction as a substitute victim to facilitate defendant's arrest destroys the "natural connection" between defendant's intentional deception and the paying over of the money. We conclude this argument is without merit. See *People v. Gunn* (1983), 112 Ill. App. 3d 1011, 1013, 446 N.E.2d 281, 283; *People v. Wurster* (1980), 83 Ill. App. 3d 399, 403, 403 N.E.2d 1306, 1310.

Nor do we find that *People v. Gordon* (1977), 45 Ill. App. 3d 282, 359 N.E.2d 794, compels a different result. In *Gordon,* the court held that there was an implied promise by defendant to pay off the lien on the car purchased from him by the complaining witness. Thus, the court could not find that the defendant had the requisite intent to defraud and it reversed defendant's conviction. (45 Ill. App. 3d 282, 286, 359 N.E.2d 794, 796-97.) Here, by contrast, defendant's intent to defraud was proved beyond a reasonable doubt. Indeed, he concedes he could have been convicted of the inchoate offense of attempt. (Ill. Rev. Stat. 1983, ch. 38, par. 8-4.) Finally, *People v. Jensen* (1982), 103 Ill. App. 3d 451, 431 N.E.2d 720, also concerned the failure of proof of defendant's intent and, similarly, is inapposite.

As defendant aptly notes, theft by deception (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) was formerly the offense of obtaining property by false pretenses. (Ill. Rev. Stat. 1939, ch. 38, par. 253; *People v. Gordon* (1977), 45 Ill. App. 3d 282, 359 N.E.2d 794; see *People v. Martin* (1939), 372 Ill. 484.) Further, the offense of false pretenses and confidence game were distinguishable because confidence game required that the victim have reposed confidence in the defendant, which was not a requirement for the offense of false pretenses (*People v. Gould* (1936), 363 Ill. 348, 352), from which the statute in the instant case was derived.

Defendant further argues that implicit in the definition of "deception" is reliance by the victim on the defendant's false representation. The essential elements which must be proved to sustain a charge of theft by deception are that the named person was the owner of the specific property, that the accused knowingly obtained by deception control over that property and that the accused acted with intent to

permanently deprive the named owner of the use and benefit of that property. (*People v. McBride* (1981), 92 Ill. App. 3d 908, 910, 416 N.E.2d 678, 679-80.) Section 15—4, defining "deception," relied upon by defendant for this contention, provides:

"As used in this Part C, 'deception' means knowingly to: (a) Create or confirm another's impression which is false and which the offender does not believe to be true \*\*\*." (Ill. Rev. Stat. 1983, ch. 38, par. 15—4.)

The evidence abundantly demonstrated that defendant created another's impression which was false and which the offender did not believe to be true, namely, that defendant could procure the release of a person for the payment of money to defendant. It is the offender's creation of the impression with the offender's knowledge of its falsity that is the gravamen of the offense and not the state of mind of the intended victim, as argued by defendant. There is no reference implicit or explicit in the definition of deception which addresses the state of mind of the victim, nor has the substantive offense been so interpreted. See 92 Ill. App. 3d 908.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE SCHNAKE, dissenting:

I respectfully dissent.

It is clear that the defendant's nefarious scheme was thwarted by the effective cooperation of the intended victim and the law enforcement authorities, but because the statute which sets forth the offense of theft by deception employs the words "Obtains by deception," in my view the State must prove reliance on the deception by the victim. It could even be more forcefully argued here that there was no deception as defined by the Criminal Code of 1961, but most certainly there was no reliance, either by Roberts or by IDLE agents. Reliance need not be specifically alleged, of course, because it is sufficient to use the plain language of the statute, "by deception." (*People v. Wurster* (1980), 83 Ill. App. 3d 399, 403 N.E.2d 1306.) But simple logic demands that reliance be proved.

On the necessity of establishing reliance, the following is found in W. LaFave and A. Scott, Criminal Law sec. 90, at 659-60 (1972):

"*Cause and Result (The Element of Reliance)*

For false pretenses it is necessary that the swindler's misrepresentation *cause* the victim to pass title to his property or money to the swindler. Looking at the matter from the point of view of the victim, the same thought may be expressed thus: for false pretenses it is required that the victim pass title to his property *in reliance upon* the swindler's misrepresentation.

Thus if the victim, although he passes title, does not believe the misrepresentations, the crime is not committed. He may pass title, though knowing the defendant to be lying, in order to be able to prosecute him for the crime; but the prosecution for the completed crime (though not for the attempt) must fail for lack of the element of reliance."

And, in 32 Am. Jur. 2d *False Pretenses* sec. 51 (1982), we find:

"To establish the crime of obtaining money or property by false pretenses, it must be shown that a misrepresentation by the defendant was relied upon by the party defrauded, and that such person was deceived. If the person defrauded knew that the representation was false, the offense has not been committed. [Citations.]"

In *People v. Gordon* (1977), 45 Ill. App. 3d 282, 359 N.E.2d 794, distinguished in the majority opinion, where the existence and disclosure of a prior lien on an automobile sold by defendant was in question, the reviewing court, in reversing a conviction for theft by deception, stated:

"We conclude that the complaining witness was fully aware of the existence of the lien." 45 Ill. App. 3d 282, 285, 359 N.E.2d 794, 796.

So here, there was no reliance by the alleged victim.

As suggested by the State in the event that we reverse, defendant should be found guilty of the lesser included offense of attempted theft by deception, as provided by Supreme Court Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3). *People v. Goolsby* (1979), 70 Ill. App. 3d 832, 388 N.E.2d 894; *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409.