(No. 61596.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LARRY E. DAVIS, Appellant.

*Opinion filed April 4, 1986.*

G. Joseph Weller, Deputy Defender, and Mary Kay Schick, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Marcia L. Friedl, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Larry Davis, was charged by criminal information with two counts of bribery (Ill. Rev. Stat. 1983, ch. 38, par. 33—1) and one count of theft by deception (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1)) in the circuit court of Winnebago County. At the close of evidence, the court directed verdicts on the two counts charging the defendant with the bribery of a Department of Corrections counselor, Curtis Lee Cottrell, but the jury found the defendant guilty of theft by deception. The defendant was sentenced to 5 years' imprisonment. The appellate court, with one justice dissenting, affirmed (131 Ill. App. 3d 264), and we granted the defendant's petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315(a)).

The question presented is whether a conviction for theft by deception was proper without proof that the victim transferred the property to the accused in reliance on the defendant's deceptive conduct.

The undisputed evidence was that the defendant, while an inmate at the Sheridan Correctional Center, was told by a counselor at the prison, Curtis Lee Cottrell, that he could be released before the completion of his sentence if Cottrell were to use his influence on the defendant's behalf. The defendant, who was serving concurrent two-year sentences for theft and parole violations, was released after serving eight months. (An offi-

cial of the Department of Corrections explained the defendant's early release. He testified that the defendant was released through the "forced release" program through which eligible inmates are released before completing their sentences in order to relieve overcrowding at the institution.)

On the evening of his release the defendant received a phone call from Cottrell in which Cottrell demanded $2,000 in payment. The defendant was unable to make the payment, but he and Cottrell agreed that Davis would contact inmates at Sheridan and offer an early release for payment of an agreed-upon amount. Davis wrote to Kenneth Sanders, an inmate and acquaintance at the correctional center, suggesting that he could arrange Sanders' release for $4,000. (The record makes no mention of censorship of mail of inmates.) Sanders apparently informed the defendant to contact Ethel Roberts, a friend who was overseeing the rental of Sanders' house and apartments while he was in prison.

The defendant telephoned Roberts on at least three occasions, each time telling her that Sanders wanted her to pay the defendant $4,000 for his release. Roberts testified that she did not believe the defendant was capable of arranging an early release for Sanders and stated that she considered Davis to be a "phony." She did, however, tell Sanders that the defendant had contacted her and also notified agents of the Department of Law Enforcement of the defendant's proposal. Sanders had already turned over Davis' letter to a guard at the prison.

Agents from the Department arranged to accompany Roberts to a meeting with Davis at a Rockford motel. The agents prepared to videotape the meeting from a van parked outside the motel and to record any conversations with the defendant by means of microphones hidden in Robert's clothing. The video and audio tapes were received into evidence and played for the jury.

The evidence, including the tapes, showed that Cottrell drove the defendant to the motel parking lot where Davis met Roberts and agent Ronald Andrei, who was posing as Roberts' son-in-law. (Cottrell remained in his car and did not participate in the meeting. He subsequently resigned from the Department of Corrections after he was suspended and recommended for discharge. The record does not disclose the criminal proceedings, if any, brought against Cottrell.) Davis represented to Roberts and Andrei that his uncle was a Federal judge in Chicago and a close friend of the Governor. He said that his uncle would be able to arrange "a full pardon" for Sanders. The representations were, of course, false. He said that his uncle had arranged for the defendant's early release, and that Sanders could similarly be released upon payment of $5,000. Agent Andrei questioned the defendant as to when Sanders would be released, why the demand had been increased to $5,000, and whether Davis was certain the scheme would be successful. Andrei and Roberts expressed approval of the arrangements, and Andrei, satisfied that sufficient evidence had been obtained, signaled to other agents in the area to move in and arrest the defendant. Before they did, Davis accepted from Andrei an envelope containing $1,150 in marked currency.

One commits theft by deception when he "knowingly *** [o]btains by deception control over the property of the owner" and "intends to deprive the owner permanently of the use or benefit of the property ***." (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(b)(1).) Deception, as defined in section 15—4 for application to the theft provisions of our criminal code (Ill. Ann. Stat., ch. 38, par. 16, Committee Comments, at 18 (Smith-Hurd 1977)), "means knowingly to create or confirm another's impression which is false and which the offender does not believe to be true ***." (Ill. Rev. Stat. 1983, ch. 38, par.

15—4(a).) The plain language of section 15—4 makes clear that an accused must create or confirm a false impression in his victim in order to satisfy the legislative definition of deception. Contrary to the appellate court's holding here, it is obvious that one would not be able to create or confirm a false impression in a person who knows that the accused's representations are false. Consequently, reliance by the victim on the defendant's deceptive conduct must be proved under our statute to permit a conviction of theft by deception.

Apart from this analysis of the statute, decisional authority requires the conclusion that the victim must have relied on the defendant's representations.

The ancestor of the theft-by-deception statute is the statute which stated the offense of obtaining property by false pretenses. (*People v. Gordon* (1977), 45 Ill. App. 3d 282, 285.) Decisions under an ancestor or prior statute will be followed unless the language of the later statute shows a contrary legislative intendment. (1A J. Sutherland, Statutory Construction sec. 22.30, at 265 (1985).) In *Simmons v. People* (1900), 187 Ill. 327, this court considered the sufficiency of an indictment charging the defendant with obtaining property by false pretenses when, the defendant pointed out, the indictment failed to allege that the victim relied on the defendant's misrepresentation. The defendant in *Simmons* had caused the owner of a tract of land to sign a deed conveying the land to him by falsely representing to the owner that he was the agent for an investment syndicate. The court, in concluding that the motion to quash the indictment should have been sustained, held that to constitute the offense it was necessary that the property be obtained *by means of* the false pretenses, though the statute did not explicitly require this. 187 Ill. 327, 330-31.

The holding in *People v. Gruber* (1935), 362 Ill. 278, is supportive of *Simmons* in regard to requiring reliance

on the false representation. There the defendant was convicted of obtaining a signature to a written instrument by false pretenses, an offense closely similar to obtaining property by false pretenses. The defendant made the hardly persuasive argument that the false invoices which he used to divert payments for his own use were too remote in time from his actually obtaining the fruits of his fraud, and consequently his misrepresentations were not such as to deceive the victim. This court held that "the real point [was] not the remoteness in time of making, but the causal connection between such representations and the obtaining of the property by means of them." 362 Ill. 278, 288.

These decisions conform to the general holding that the offense of obtaining property by false pretenses requires a showing that the intended victim relied on the defendant's misrepresentations and was deceived. *State v. Hauck* (1973), 190 Neb. 534, 209 N.W.2d 580; *Knopp v. State* (1954), 233 Ind. 435, 120 N.E.2d 268; *Harwei, Inc. v. State* (Ind. App. 1984), 459 N.E.2d 52; *City of Kansas City v. Fritz* (Mo. App. 1980), 607 S.W.2d 837; *People v. Lorenzo* (1976), 64 Cal. App. 3d Supp. 43, 135 Cal. Rptr. 337; *Lambert v. State* (1975), 55 Ala. App. 242, 314 So. 2d 318 *cert. denied* (1975), 294 Ala. 763, 314 So. 2d 322; see also W. LaFave & A. Scott, Criminal Law sec. 90, at 659-60 (1972); Clark & Marshall, Crimes sec. 12.23, at 815 (6th ed. 1958).

We have not examined the question, but other jurisdictions have held that reliance on the misrepresentations must be shown for a conviction of theft by deception. In Kansas the offense is defined as

"any one of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:

\*\*\*

(b) Obtaining by deception control over property."

(Kan. Stat. Ann. sec. 21—3701(b) (1977).)

The defendant in *State v. Finch* (1978), 223 Kan. 398, 573 P.2d 1048, had switched sales tags from dresses which were on sale to two higher priced dresses he wished to purchase. He was allowed to pay the sales-tag price and take the dresses, even though the cashier had been notified of the defendant's deception. He was arrested outside of the store. The court, in reversing his conviction of theft by deception, stated:

> "[I]n order to convict a defendant of theft by deception *** the state must prove that the defendant with the required intent obtained control over another's property *by means of* a false statement or representation. To do so the state must prove that the victim was actually deceived and relied in whole or in part upon the false representation." (Emphasis in original.) 223 Kan. 398, 404, 573 P.2d 1048, 1053.

The Supreme Court of Utah reached the same conclusion in *State v. Jones* (Utah 1982), 657 P.2d 1263. The court construed the theft-by-deception statute, under which a person commits the offense "if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof" (Utah Code Ann., sec. 76—6—405(1) (1978)), to require reliance by the victim as an element of the offense. The court, in upholding the conviction, stated:

> "It is clear from the face of the statute that reliance by the victim is an element of the crime of theft by deception. In context, obtaining property 'by deception' can only mean 'by means of deception.' Deception, followed by transfer of property to the deceiver does not add up to theft by deception without the causal element of reliance." 657 P.2d 1263, 1267.

Thus, from decisions as well as from a literal reading of the statute, we judge that, as in prosecutions for obtaining property by false pretenses, the prosecution must show under our theft-by-deception statute reliance by the

victim on the deceptive conduct.

The State states that in the event we hold that the victim's reliance on the deceptive conduct is a prerequisite to conviction for theft by deception, under Rule 615(b)(3) (87 Ill. 2d R. 615(b)(3)), we should reduce the conviction to one for attempted theft. The defendant concedes that "[t]he State did, in fact, prove [him] guilty of attempted theft beyond a reasonable doubt." The propriety of the State's contention is illustrated in W. La-Fave & A. Scott, Criminal Law sec. 90, at 660 (1972):

> "[F]or false pretenses it is required that the victim pass title to his property *in reliance upon* the swindler's misrepresentation.
>
> Thus if the victim, although he passes title, does not believe the misrepresentation, the crime is not committed. He may pass title, though knowing the defendant to be lying, in order to be able to prosecute him for the crime; but the prosecution for the completed crime (though not for the attempt) must fail for lack of the element of reliance." (Emphasis in original.)

Accordingly, we reverse the judgments of the appellate and circuit courts, substitute a judgment of guilty of the lesser included offense of attempted theft by deception (Ill. Rev. Stat. 1983, ch. 38, pars. 2—9(b), 8—4; see also *People v. Elmore* (1971), 50 Ill. 2d 10), and remand the cause to the circuit court of Winnebago County for sentencing.

*Judgments reversed;*
*judgment entered here;*
*cause remanded.*