THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DERRICK PORTER, Defendant-Appellee.

First District (5th Division)   No. 1—92—1388

Opinion filed October 9, 1992.

Jack O'Malley, State's Attorney, of Chicago (Michele I. Lavin, Special Assistant State's Attorney, and Renee Goldfarb and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

Geary W. Kull and Daniel T. Coyne, both of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

On February 20, 1992, the trial court allowed the defendant's motion to dismiss based upon double jeopardy grounds. The State filed a motion to reconsider, and that motion was subsequently denied. The State filed this timely appeal. The facts are as follows.

On October 18, 1988, the defendant, Derrick Porter (Porter) was convicted of the murder of Willie Bibbs by a jury requested by the State. On June 6, 1990, this court reversed the conviction following the State's confession of error pursuant to the Illinois Supreme Court's decision in *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873.

On October 26, 1989, while in Federal custody pursuant to a Federal passport violation, defendant was indicted along with 37 other alleged members and associates of the El Rukn organization. Defendant was charged with racketeering conspiracy (count I), substantive racketeering (count II), narcotics conspiracy (count III), and obstruction of justice (count XVI). In the substantive racketeering count alleged in count II of the Federal indictment, defendant was charged with the commission of eight separate predicate racketeering acts, which included five separate conspiracies to commit murder, one murder, obstruction of justice, and conspiracy to distribute narcotics. The one predicate act involving murder charged the murder of Willie Bibbs, which is the subject of the State-court murder charges at issue in this case.

As alleged in the Federal indictment, the murder of Willie Bibbs as well as the five murder conspiracies all were committed between August 1977 and June 1983. The obstruction of justice was alleged to

have occurred in 1988. The narcotics conspiracy was alleged to have continued into 1989.

At trial on the Federal charges, the defendant brought a motion for a directed verdict under Rule 29 of the Federal Rules of Criminal Procedure. With respect to counts I and II, the defendant raised a statute of limitations issue. The trial court stated, "Under the law, specifically Title 18 United States Code, Section 3282, the statute of limitations bars prosecution for any offense that occurred more than five years before the date of the return of the indictment." The court dismissed the obstruction of justice and narcotics conspiracy charges finding that there was insufficient evidence that Porter was a member of the narcotics conspiracy within five years of the date of the return of the indictment. On August 22, 1991, the Federal district court entered an order finding defendant not guilty on counts I, II, III, and XVI.

On February 20, 1992, the trial court allowed defendant's motion to dismiss the State murder charges based upon double jeopardy. The State filed a motion to reconsider which was subsequently denied.

The sole issue on appeal is whether the trial court erred in dismissing the State murder charges against defendant on double jeopardy grounds.

The State maintains that the trial court erred in dismissing the State murder charges, because the question as to whether two offenses are the same for the purposes of double jeopardy is a question of legislative intent, and the Federal courts have found that the legislature clearly intended that there be prosecutions for both Federal RICO charges and the predicate offenses. In addition, the State maintains that defendant was not "acquitted" for the murder of Willie Bibbs for purposes of double jeopardy. Conversely, Porter argues that the Federal case and the State case both prosecuted the same offense as defined for the purposes of double jeopardy analysis, and that the defendant was "acquitted" within the meaning of the term "acquittal" as defined by the United States Supreme Court. Accordingly, Porter maintains that the trial court properly dismissed the indictment pending against the defendant. For the following reasons, we affirm the decision of the trial court.

■ The fifth amendment guarantee against double jeopardy (U.S. Const., amend. V), enforceable against the States under the fourteenth amendment (U.S. Const., amend. XIV), affords individuals three types of protection: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection

against multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072; *People v. Stefan* (1992), 146 Ill. 2d 324, 586 N.E.2d 1239.) The Illinois Constitution provides that "[n]o person shall be compelled in a criminal case to *** be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10.

Federal prosecution of a defendant does not necessarily bar a subsequent State prosecution of a defendant. (*Bartkus v. Illinois* (1959), 359 U.S. 121, 3 L. Ed. 2d 684, 79 S. Ct. 676.) However, section 3—4 of the Illinois Criminal Code of 1961 prohibits such successive prosecutions "unless each prosecution requires proof of a fact not required in the other prosecution." (Ill. Rev. Stat. 1991, ch. 38, par. 3—4(c)(1); *People v. Covelli* (1989), 184 Ill. App. 3d 114, 540 N.E.2d 569.) Section 3—4 of the Illinois Criminal Code of 1961 provides in relevant part:

"(c) A prosecution is barred if the defendant was formerly prosecuted in a District Court of the United States or in a sister State for an offense which is within the concurrent jurisdiction of this State, if such former prosecution:

(1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for the same conduct, unless each prosecution requires proof of a fact not required in the other prosecution, or the offense was not consummated when the former trial began; or

(2) Was terminated by a final order or judgment, even if entered before trial, which required a determination inconsistent with any fact necessary to a conviction in the prosecution in this State." Ill. Rev. Stat. 1991, ch. 38, par. 3—4(c).

### SAME OFFENSE

To give rise to a valid claim of double jeopardy, be it based on constitutional or statutory grounds, it must be shown that the two offenses charged are the "same offense." (*People v. Johnson* (1978), 63 Ill. App. 3d 248, 250, 380 N.E.2d 461, 463.) The test for determining whether two offenses are the same for double jeopardy purposes has been set forth in *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182, wherein the court stated:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

In 1990 the Supreme Court held in *Grady v. Corbin* (1990), 495 U.S. 508, 520, 109 L. Ed. 2d 548, 564, 110 S. Ct. 2084, 2093, that a technical comparison of the elements of the two offenses as required by the *Blockburger* test does not provide sufficient protection for defendants from the burden of multiple trials. The *Grady* court held that the *Blockburger* test provides the initial analysis for double jeopardy purposes and if the test's application reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred. (*Grady*, 495 U.S. at 516, 109 L. Ed. 2d at 561, 110 S. Ct. at 2090.) The critical inquiry in determining whether the government will prove conduct in the subsequent prosecution that constitutes an offense for which the defendant has already been prosecuted is what conduct the State will prove, not the evidence the State will use to prove it. (*Grady*, 495 U.S. at 521-22, 109 L. Ed. 2d at 564-65, 110 S. Ct. at 2093.) Although the presentation of specific evidence in one trial does not forever prevent the government from introducing the same evidence in a subsequent proceeding, a State cannot avoid double jeopardy merely by altering in successive prosecutions the evidence offered to prove the same conduct. *Grady*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084.

Recently, in *People v. Stefan* (1992), 146 Ill. 2d 324, 336, 586 N.E.2d 1239, the Illinois Supreme Court indicated that *Grady* sets forth the proper double jeopardy test. In *Stefan*, the Illinois Supreme Court, on an interlocutory appeal brought by the defendant, reversed the trial court's denial of a motion to dismiss indictments for criminal and reckless disposal of hazardous waste into a local sanitary sewer system in violation of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1001 *et seq.*). These indictments followed previous charges brought by the Village of Addison in a municipal prosecution and pleas of guilty in those cases. The issue presented was whether the prior prosecutions for knowingly discharging certain chemicals into the public sewer system in violation of the Addison ordinance acted as a bar under constitutional double jeopardy provisions of the subsequent prosecution for criminal and reckless disposal of hazardous waste in violation of the Environmental Protection Act. After applying both the *Blockburger* and *Grady* tests, the court concluded that while different prosecuting authorities were involved, the same conduct was being prosecuted in each case and hence violated the constitutional prohibitions against double jeopardy.

One of the predicate acts of the Federal racketeering charge against Porter was the murder of Willie Bibbs. Count II, paragraph (10), of the Federal indictment alleges:

"(10) *Racketeering Act No. 10*

*The Murder of Willie Bibbs*

On or about June 15, 1981, at Chicago, in the Northern District of Illinois, defendants WILLIAM DOYLE, DERRICK KEES, EARL HAWKINS, DERRICK PORTER, ANTHONY SUMNER, and others known and unknown to the Grand Jury, including Jeff Fort and Ray Ferguson, did commit the crime of murder in that the defendants did knowingly and intentionally kill and cause to be killed Willie Bibbs, a member of the Titanic Stones also known as 'Dollar Bill', without lawful justification, in violation of Illinois Revised Statutes, Chapter 38, Section 9—1."

In the Federal case the government submitted a jury instruction which states:

"Under Illinois law, a person who kills without lawful justification commits murder, if, in performing the acts which cause the death:

(1) he either intends to kill or do great bodily harm to that individual or another; or

(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another." (See Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1989 Supp.).)

The government also submitted Illinois Pattern Jury Instruction No. 7.02, which provides:

"To sustain the charge of murder under Illinois law, the government must prove the following propositions:

First, that the defendant performed the acts which caused the death of another person; and

Second, that when the defendant did so, he intended to kill or do great bodily harm to that other person, or that he knew that his acts created a strong probability of death or great bodily harm to that other person.

In order for you to find that a particular defendant committed murder under Illinois law as charged in Racketeering Act Nos. 6, 10, 13(b), and 18(b), the government must prove these two propositions beyond a reasonable doubt as to that particular defendant." See Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1989 Supp.).

Count I of the State case alleged that Porter, "without lawful justification, intentionally and knowingly shot and killed Willie Bibbs, with a gun, in violation of chapter 38, section 9—1—A(1) of the Illinois Revised Statutes 1980 as amended." Count II of the State case alleged that Porter, "without lawful justification, shot and killed Willie Bibbs, with a gun, knowing that such a shooting with a gun, created a strong probability of death or great bodily harm to said Willie Bibbs, in violation of chapter 38, section 9—1—A(2) of the Illinois Revised Statutes 1980 as amended."

■ The question presented, then, is whether Porter's impending prosecution in Illinois for murder is barred because it amounts to a prosecution of the same offense for which he was acquitted in Federal court. More specifically the question is whether the RICO offense and the murder charge each requires an element of proof which the other offense does not include.

The defendant first looks toward the *Blockburger* test, arguing that it is clear that while the Federal case required numerous additional elements to be proven, the State case required no elements in addition to those attempted to be proven in the Federal case. The State is only required to prove that the defendant committed the offense of murder as set forth in the indictment. To prove that offense the State must prove that the defendant intentionally and knowingly shot and killed Willie Bibbs (count I) or that the defendant shot Willie Bibbs knowing that such shooting created a strong probability of death or great bodily harm to Willie Bibbs (count II). In the Federal case, the defendant was charged with the killing of Willie Bibbs as a predicate act to a RICO count. The defendant maintains that in an attempt to sustain their burden with regard to the killing of Willie Bibbs, the government utilized the Illinois Pattern Jury Instructions defining murder and outlining the issues in murder for both of the aforementioned forms of murder in instructing the jury. Defendant submits that it is clear that the charges were the same in both the State case and the predicate act of the Federal case. We agree.

Defendant next looks to the *Grady* test. Defendant argues that the only conduct involved in the State case is the shooting of Willie Bibbs and this is the identical conduct that formed the basis for a predicate act in the Federal case. Once again, we agree.

Third, the defendant addresses the protection extended by section 3—4(c)(1) of the Criminal Code. Section 3—4(c)(1) requires a review of the statutory elements of the offense in order to conduct the same offense analysis. (*People v. Kaye* (1987), 154 Ill. App. 3d 562, 507 N.E.2d 12.) Defendant submits that the statutory elements are identi-

cal both in the State case and the Willie Bibbs predicate act in the Federal case thereby making them the same offense under the statutory analysis. We agree.

The State maintains that the proper analysis in this case must be conducted according to *Garrett v. United States* (1985), 471 U.S. 773, 85 L. Ed. 2d 764, 105 S. Ct. 2407. Defendant alleges that *Stefan* expressly rejected the reasoning in *Garrett*. (*People v. Stefan* (1992), 146 Ill. 2d 324, 586 N.E.2d 1239.) We disagree; the court in *Stefan* specifically found that the nature of the conduct and offenses charged in *Garrett* were distinguishable from the facts in that case. (*Stefan*, 146 Ill. 2d at 329.) Therefore, we need to determine whether *Garrett* is distinguishable from the present case.

The court in *Garrett* examined the double jeopardy implication of a prosecution for engaging in a "continuing criminal enterprise" (CCE), in violation of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §848 (1988), when facts underlying a prior conviction are offered to prove one of three predicate offenses that must be shown to make out a CCE violation. (*Garrett v. United States* (1985), 471 U.S. 773, 85 L. Ed. 2d 764, 105 S. Ct. 2407.) The defendant was charged with several drug offenses in Washington during 1979 and 1980 and subsequently pleaded guilty to one count of importation of marijuana. Subsequently, the defendant was indicted in Florida on a CCE charge. *Garrett*, 471 U.S. at 776, 85 L. Ed. 2d at 769-70, 105 S. Ct. at 2410.

The CCE offense required proof that the defendant had committed a felony that was part of a series of three or more violations of the statute over a definite period of time with a substantially similar purpose. Additionally, a conviction would require a finding that the defendant acted in concert with five or more other persons; that the defendant acted in a supervisory position in the criminal operation; and that the defendant received substantial income from the operation. *Garrett*, 471 U.S. at 776, 85 L. Ed. 2d at 770, 105 S. Ct. at 2410.

The supreme court in *Garrett* examined the language of the CCE statute and the legislative history behind it and found that it was aimed at a special problem and was designed to reach the "top brass" in the drug rings and not the underlings. (*Garrett*, 471 U.S. at 781, 85 L. Ed. 2d at 773, 105 S. Ct. at 2413.) "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature *** intended that each violation be a separate offense." (*Garrett*, 471 U.S. at 778, 85 L. Ed. 2d at 771, 105 S. Ct. at 2411.) After the court determined that

Congress intended CCE to be a separate offense and that it intended to permit prosecution for both the predicate offenses and the CCE offense, the court looked to the question of whether the prosecution for both the predicate offenses and the CCE offense is constitutional under the double jeopardy clause. (*Garrett,* 471 U.S. at 786, 85 L. Ed. 2d at 776, 105 S. Ct. at 2415.) The court stated, "The critical inquiry is whether a CCE offense is considered the 'same offense' as one or more of its predicate offenses within the meaning of the Double Jeopardy Clause." (*Garrett,* 471 U.S. at 786, 85 L. Ed. 2d at 776, 105 S. Ct. at 2415.) To make this determination, the court discussed whether the predicate offense was a "lesser included offense" of CCE. (*Garrett,* 471 U.S. at 787-89, 85 L. Ed. 2d at 776-78, 105 S. Ct. at 2415-16.) The court referred to the conduct charged as "multilayered" both as to time and place. Finally, after finding that they had "serious doubts" as to whether the offense to which Garrett pleaded guilty in Washington was a lesser included offense, the court found that even if it was a lesser included offense, the double jeopardy claim was not sustainable, because the government's evidence with respect to the CCE charge included acts which took place after March 1981, the date of the Washington indictment to which Garrett pleaded guilty. (*Garrett,* 471 U.S. at 790-93, 85 L. Ed. 2d at 779-81, 105 S. Ct. at 2417-18.) Thus, the CCE had not been completed by the time defendant was indicted in Washington, and under the *Diaz* rule of evidence, the Washington offenses could be used to show one of the predicate offenses. (*Garrett,* 471 U.S. at 792-93, 85 L. Ed. 2d at 780, 105 S. Ct. at 2418, referring to *Diaz v. United States* (1912), 223 U.S. 442, 56 L. Ed. 500, 32 S. Ct. 250.) The court concluded that Congress intended CCE to be a separate offense and that it did not violate the double jeopardy clause under the facts of that case to prosecute the CCE offense after a prior conviction for one of the predicate offenses. *Garrett,* 471 U.S. at 793, 85 L. Ed. 2d at 780, 105 S. Ct. at 2418.

The RICO statute requires that the government prove the existence of an enterprise and a pattern of racketeering, which requires the commission of at least two predicate acts. (*United States v. Turkette* (1981), 452 U.S. 576, 69 L. Ed. 2d 246, 101 S. Ct. 2524; see also 18 U.S.C. §1961 (Appendix F) (1988).) The government is bound by the Federal statute of limitations. 18 U.S.C. §3282 (1988).

The State argues, "because the legislature intended that there be prosecutions for both the RICO charges and the predicate offenses, because the offenses are sufficiently distinguishable as they are aimed at entirely different conduct, and because the RICO offenses involve the type of multilayered conduct not easily interpreted under the

*Blockburger* test, they are not the 'same offense' for purposes of double jeopardy." Thus, the State maintains that it should be permitted to prosecute defendant for the murder of Willie Bibbs.

The State points out that the purpose of the RICO statute was aimed at controlling a specific type of organized criminal behavior, whereas the Illinois murder statute is aimed at prohibiting the specific individual crime of killing an individual. The State maintains that we should follow the holding in *Garrett* because the RICO statute involves multilayered conduct as CCE did in *Garrett*. We agree with the State that violations of RICO and CCE involve multilayered conduct and as such are somewhat similar. Following the holding in *Garrett*, if Porter had been convicted of the murder of Willie Bibbs prior to the trial on the RICO charges, the government would have been able to utilize that conviction as the basis of one of the predicate acts for the RICO charge. However, that is not the factual scenario in the present case. We find the fact that Porter was charged with murder subsequent to an acquittal on the RICO charges distinguishes the present case from *Garrett*.

The State claims that the order of prosecution has no bearing on the issue of whether two crimes are considered the "same offense" and may both be prosecuted and punished. We disagree. RICO and CCE both involve multilayered conduct, and it is implicit in those offenses that the defendant has committed a number of predicate offenses. The prosecution may use prior convictions to prove a predicate act. We do not dispute the fact that RICO and murder are not the "same offense"; however, the predicate act of murder and the State charge of murder are the "same offense." The State prosecution for murder does not require proof of a fact not required in the prosecution of the Willie Bibbs predicate act. We find that for the purposes of double jeopardy the predicate act of murder as used in the Federal indictment and the State charge of murder are the same offense.

## ACQUITTAL

The State also argues that dismissal of the State murder charge is not warranted where there has been no acquittal in Federal court. The State maintains that Porter's RICO charge was dismissed in Federal court based on a failure to prove the statute of limitations and dismissal on a statute of limitations is not an "acquittal," for purposes of double jeopardy, because it is not a resolution of any factual issues. The order of dismissal in the Federal case states in relevant part:

"Trial held—jury. For the reasons stated in open court ***. Defendant Porter's motion for directed verdict and for judgment of acquittal is granted. Defendant Porter is found not guilty on counts 1, 2, 3, 16. Defendant Porter is to be released from custody forthwith."

The State cites *United States v. Scott* (1978), 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187, and *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349, to support its position. The defendant maintains that the aforementioned cases are distinguishable from the present case.

The United States Supreme Court stated in *United States v. Scott*, 437 U.S. at 97, 57 L. Ed. 2d at 78, 98 S. Ct. at 2197, "[A] defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' " *United States v. Scott*, 437 U.S. at 97, 57 L. Ed. 2d at 78, 98 S. Ct. at 2197, quoting *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 571, 51 L. Ed. 2d 642, 651, 97 S. Ct. 1349, 1355; see also *People ex rel. Daley v. Crilly* (1985), 108 Ill. 2d 301, 311, 483 N.E.2d 1236, 1240-41.

In *Scott* the Court examined the relationship between the double jeopardy clause and reprosecution of a defendant who had successfully obtained a termination of his proceedings in his favor before any determination of factual guilt or innocence. (*Scott*, 437 U.S. at 94, 57 L. Ed. 2d at 76, 98 S. Ct. at 2195.) The Court explained that a termination of the proceedings based upon preindictment delay was not a factual resolution of any of the factual elements of the offense charged and, accordingly, was not an "acquittal" which would bar a subsequent prosecution.

In *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 51 L. Ed. 2d 642, 97 S. Ct. 1349, the trial court entered a judgment of acquittal after a deadlocked jury was discharged because it was unable to reach a verdict in the defendant's criminal contempt trial. The motion was made pursuant to Rule 29(c) of the Federal Code of Criminal Procedure. The court of appeals held that the double jeopardy clause barred the government from appealing the judgment. The Supreme Court affirmed, holding that the normal policy granting the government the right to retry a defendant after mistrial does not apply where valid judgments of acquittal are entered by the trial court after jeopardy attaches and before a verdict is reached. The Court held that the double jeopardy clause barred the government's appeal, because a "successful governmental appeal reversing the judg-

ments of acquittal would necessitate another trial, or, at least, 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' " *United States v. Martin Linen Supply Co.* (1977), 430 U.S. 564, 570, 51 L. Ed. 2d 642, 650, 97 S. Ct. 1349, 1354, quoting *United States v. Jenkins* (1975), 420 U.S. 358, 370, 43 L. Ed. 2d 250, 259, 95 S. Ct. 1006, 1013.

Defendant maintains that it is necessary to conduct a review of the trial court's ruling in the Federal case so as to determine whether the trial court made a determination as to the sufficiency of the evidence. Defendant cites to numerous excerpts from the Federal case. A review of the transcript discloses the following. The court made specific findings concerning count XVI and predicate act 28(b), which charged that Porter and Noah Robinson endeavored to impede the due administration of justice by planning to murder Henry Leon Harris in order to prevent him from cooperating with and providing information to law enforcement officials regarding the commission of Federal offenses. The court found that there had been a total failure of proof and that the only evidence supporting this count in this predicate act was the testimony of a witness who made materially conflicting statements under oath during his grand jury appearances and his two trial appearances. The court indicated that Porter's motion for a directed verdict as to count XVI and predicate act 28(b) was granted.

Subsequently the court stated:

"With respect to Counts 1 and 2, Mr. Porter raises a statute of limitations issue. Under the law, specifically Title 18, United States Code, Section 3282, the statute of limitations bars prosecution for any offense that occurred more than five years before the date of the return of the indictment, which in this case was November of 1989."

The court found that the testimony in the government's own case established that Porter left the El Rukns in late 1983 or early 1984 and based on the evidence a reasonable jury "could not conclude beyond a reasonable doubt that either Mr. Porter never left the conspiracy or that he reentered the conspiracy." The court also found that based upon the evidence a reasonable jury could not conclude beyond a reasonable doubt that Porter's actions were part of an El Rukn narcotics conspiracy as charged in counts I and III. The Federal court concluded by stating:

"So based on these considerations, I find that there is insufficient evidence to establish that Mr. Porter either was a member of the conspiracy or of the racketeering organization as the El Rukns are defined in Count 2 during the period of the stat-

ute of limitations. That's within the five years prior to indictment. So for those reasons, I'm granting the motion for judgment of acquittal on Counts 1, 2 and 3."

The Federal court made numerous findings on the evidence; however, none of the findings related specifically to the murder of Willie Bibbs.

The State also cites to *People v. Young* (1983), 116 Ill. App. 3d 984, 452 N.E.2d 718, which states that the accused is acquitted only when the ruling of the judge, whatever its label, actually represents resolution in the accused's favor, correct or not, of some or all of the factual elements of the offense charged. The word "acquittal" has no talismanic quality for purposes of the double jeopardy clause, and the trial judge's characterization of his own action cannot control the classification of the action. (*People v. Young* (1983), 116 Ill. App. 3d 984, 452 N.E.2d 718.) However, in *Young* it was also stated: "A directed verdict of acquittal constitutes a final adjudication on the merits of those charges affected by the motion [citation] and the granting of a motion to direct a verdict is an acquittal sufficient even if a judgment of acquittal is not entered thereon." *Young*, 116 Ill. App. 3d at 993.

The Federal court granted the acquittal pursuant to Rule 29 of the Federal Code of Criminal Procedure, which provides in relevant part:

> "MOTION BEFORE SUBMISSION TO JURY. Motions for directed verdicts are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motions shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficent to sustain a conviction of such offense or offenses." Fed. R. Crim. P. 29(a).

The Illinois Supreme Court has stated: "The Supreme Court has held that the primary purpose of the double jeopardy clause is to protect defendants from multiple trials for the same offense, rather than to shield every determination favorable to the defendant from appellate review." (*People v. Mink* (1990), 141 Ill. 2d 163, 175, 565 N.E.2d 975, citing *United States v. Wilson* (1975), 420 U.S. 332, 43 L. Ed. 2d 232, 95 S. Ct. 1013.) "Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." *Grady v. Corbin* (1990), 495 U.S. 508, 518, 109 L. Ed. 2d 548, 562, 110 S. Ct. 2084, 2091-92; see, *e.g.*, *Tibbs v. Florida* (1982), 457 U.S. 31, 41, 72 L. Ed. 2d 652, 661, 102 S. Ct. 2211, 2218 (noting that the double jeopardy clause "prevents the State from honing its

trial strategies and perfecting its evidence through successive attempts at conviction"); *Ashe v. Swenson* (1970), 397 U.S. 436, 447, 25 L. Ed. 2d 469, 477, 90 S. Ct. 1189, 1196 (the State conceded that, after the defendant was acquitted in one trial, the prosecutor did, at a subsequent trial, " 'what every good attorney would do—he refined his presentation in light of the turn of events at the first trial' ").

Recently the Third District of the Illinois Appellate Court held that a criminal charge which was dismissed on double jeopardy grounds was an "acquittal" within the meaning of section 3—4(b) of the Illinois Criminal Code of 1961. (*People v. Hiatt* (1992), 229 Ill. App. 3d 1094, 1098, 595 N.E.2d 773.) The court stated:

> "Section 2—1 of the Code defines an acquittal as 'a verdict or finding of not guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury.' (Ill. Rev. Stat. 1989, ch. 38, par. 2—1.) Criminal or penal statutes are to be strictly construed in favor of the accused and nothing is to be taken by intendment or implication against him beyond the literal and obvious meaning of the statute. [Citation.]

> We find that the statutory definition of acquittal is broad enough to encompass a dismissal based on double jeopardy grounds. An acquittal may occur even though the question of guilt or innocence has never been submitted to the trier of fact such as when a defendant is discharged on speedy trial grounds." *Hiatt*, 229 Ill. App. 3d at 1098, 595 N.E.2d at 773.

■ The Federal case was not dismissed at the pretrial stage, but rather the directed verdict was granted after the jury was empaneled and both the prosecution and the defense presented their respective case. Defendant's counsel stated at oral argument that this was a six- or seven-week trial. The government, not the defendant, chose which acts were to be tried as predicate acts to the RICO charges. We find that the "acquittal" in Federal court bars subsequent prosecution of the defendant on the State murder charges.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court to dismiss the charges against defendant on the basis of double jeopardy.

Judgment affirmed.

LORENZ and GORDON, JJ., concur.