2021 IL App (1st) 191847-U

No. 1-19-1847

Order filed June 11, 2021

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 186004393 |
| | ) | |
| MICHAEL MALONE, | ) | Honorable |
| | ) | George Louis Canellis Jr. and |
| Defendant-Appellant. | ) | Vincenzo Chimera, |
| | | Judges, presiding. |

---

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed where the evidence presented at trial was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that defendant committed theft by deception when he used his State of Illinois-issued fuel card to make a personal gasoline purchase.

¶ 2    Following a bench trial, defendant Michael Malone was found guilty of one count of misdemeanor theft by deception and sentenced to six months' supervision. On appeal, defendant argues his conviction must be reversed because there was insufficient evidence that, by deception,

he purchased gasoline using a State of Illinois-issued card with the intent to deprive the State of its value. For the following reasons, we affirm.

¶ 3    Defendant was charged by misdemeanor complaint with one count of theft by deception, alleging that on December 1, 2017, he knowingly and unlawfully without consent purchased gasoline using his State of Illinois-issued fuel card and subsequently filled plastic gasoline cans in a total value not exceeding $500 "intending to deprive the State" (720 ILCS 5/16-1(a)(2)(A) (West 2016)).

¶ 4    At trial, Kehinde Salami, the Illinois Department of Corrections (IDOC) deputy commander of investigations for the northern region, testified that on December 1, 2017, he went to a gasoline station on the 18200 block of South Halsted Street in Glenwood, Illinois, to make a purchase. While there, Salami saw a white Impala with a "U plate" identifying the vehicle as an IDOC vehicle assigned to a "patrol agent." The Impala's trunk was open with three red gasoline cans inside. Defendant, who Salami had never met before, was pumping gasoline into one of the cans in the trunk. Salami explained that this sight raised a red flag for him because it was unusual to see gasoline cans being filled in the trunk of a state vehicle.

¶ 5    Salami approached defendant and asked what he was doing. Defendant told Salami he was "filling the gas can because he received a phone call from someone to take gas halfway down to Springfield." This raised another red flag to Salami because IDOC has a contract with Central Management System (CMS) to handle any problems with its vehicles. Salami explained, "Any issues that we have with vehicles, [CMS] will fill, they will repair. They will also tow if necessary."

¶ 6    Salami asked defendant who called him, but defendant would not provide a name. Salami told defendant that, if defendant did not tell him who called defendant, he would contact

defendant's deputy chief. Salami then asked defendant to identify himself, which defendant did. When Salami identified himself and his position as deputy commander of investigations, defendant asked Salami, "Hey sir, hey sir, can you gave [*sic*] me a break today? You can take my cans." Salami understood this to mean that defendant was asking him to not report the incident and "just let it go." Salami denied defendant's request, walked away, and reported the incident to his commander.

¶ 7    On cross-examination, Salami testified he did not know what the value of the gasoline was, how much was placed in the container, how it was paid for, or if it was later used in an IDOC vehicle. Salami's complaint was turned over to "ISP" for investigation.

¶ 8    Illinois State Police (ISP) investigator Kiara Haynes testified that on December 5, 2017, she was assigned to investigate a complaint regarding defendant using his State-issued card for gasoline purchases.[1] Haynes visited the Delta Sonic gasoline station allegedly used in the transaction, which was located on the 18200 block of Halsted. She requested the video surveillance footage from December 1, but was advised that any footage would not have captured the incident.

¶ 9    Haynes then obtained IDOC policies regarding vehicle use and employee use of their State-issued cards, commonly referred to as a "Wex" cards. Haynes testified that Wex cards were provided to employees for State "vehicle maintenance," such as purchasing fuel and oil changes. State employees were prohibited from using Wex cards to make personal purchases. The cards were strictly for Illinois State business.

---

[1] Haynes does not identify the card as a credit card, but defendant refers to the card as a credit card in his opening statement and motion for a directed finding.

¶ 10    Haynes also obtained defendant's Wex card records, which showed that on December 1, defendant charged around $46 to his card. Haynes could not remember "the exact amount worth of fuel at that gas station on the alleged date." Haynes was unable to interview defendant regarding the allegations, and eventually filed a criminal complaint. On cross-examination, Haynes testified she did not recall whether defendant's purchase was "only for gasoline."

¶ 11    Defendant moved for a directed finding, arguing that there was no testimony establishing a theft occurred where although there was a "credit card" purchase, the investigator could not say how the gasoline was paid for, whether the "credit card" or something else was used, whether separate purchases were made for the containers, or for what purpose the gasoline was going to be used. Defendant argued there was no evidence of "anything being done to deprive the State of Illinois of its gasoline." The trial court denied defendant's motion.

¶ 12    After the trial court admonished defendant of his right to testify, the defense rested.

¶ 13    The trial court found defendant guilty, noting that Salami's testimony was "very credible" and that the circumstantial evidence showed "a clear theft." The court explained:

> "As I stated, Mr. Salami made the observations he thought was [*sic*] unusual and then based upon the defendant's subsequent statements, clearly he was lying when he said that he was trying to help somebody; otherwise, he wouldn't be asking for a break; otherwise, he wouldn't be saying you can take my cans and he wouldn't be asking for Commander Salami to not report it. All of that coupled with the fact that a purchase was made and this purchase was not going into the car but going into these individual gas cans that [defendant] was filling clearly shows an intent to deprive and based upon that, there's going to be a finding of guilt."

¶ 14    After trial, the trial court allowed defendant's counsel to withdraw at defendant's request and defendant hired new counsel. Defendant's new counsel filed a motion to reconsider and for a new trial challenging the sufficiency of the evidence and arguing that defendant's former counsel deprived him of a viable defense by advising him not to testify. The trial court rejected defendant's claims, stating that the State met its burden and that defendant was admonished as to his right to testify.

¶ 15    At the sentencing hearing before a different judge, defendant stated in allocution that his IDOC vehicle was old, unreliable, and the gasoline and heat gauges did not work. Defendant claimed that he had previously been stranded in Englewood because he ran out of gasoline, "so instead of walking down the street with a side arm in a gang-infested area, I decided to keep the gas can in the car and keep gas in it." Defendant complained that his trial counsel did not defend him, and that he had brought in witnesses to testify to the poor condition of his vehicle. The court sentenced defendant to six months' supervision.

¶ 16    On appeal, defendant argues his conviction must be reversed because there was insufficient evidence that, by deception, he purchased gasoline using his "WEX" card with the intent to deprive the State of its value. Defendant asserts that there was no evidence that the extra gasoline was not intended for State purposes, such as to be used if his vehicle broke down. He adds that there was also no evidence that he paid for the extra gasoline on his WEX card rather than on a personal credit card. Finally, defendant claims there was no evidence of deception.

¶ 17    When considering a challenge to the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "[A] reviewing court will not reverse a criminal conviction unless the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Rowell*, 229 Ill. 2d 82, 98 (2008). It is the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 18 A reviewing court does not retry the defendant or substitute its judgment for that of the trier of fact with regard to the credibility of witnesses, the weight to be given to each witness' testimony, or the reasonable inferences to be drawn from the evidence. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). Instead, it is the reviewing court's duty to "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011).

¶ 19 Defendant challenges the sufficiency of the evidence for his conviction of theft by deception. Theft by deception involves the use of false representations to obtain money. See *People v. Wurster*, 83 Ill. App. 3d 399, 403 (1980). To convict a defendant of theft by deception as charged here, the State must prove that he: (1) knowingly obtained control, (2) over the property of the owner, (3) by deception, (4) with the intent to permanently deprive the owner of the use or benefit of the property. *People v. Perry*, 224 Ill. 2d 312, 337 (2007); 720 ILCS 5/16-1(a)(2)(A) (West 2016). The State must also prove (5) the value of the stolen property in order to establish the grade of the offense, here a Class A misdemeanor. *Perry*, 224 Ill. 2d at 337; 720 ILCS 5/16-

1(b)(1) (West 2016) ("[t]heft of property not from the person and not exceeding $500 in value is a Class A misdemeanor").

¶ 20    Viewing the evidence in a light favorable to the State, as we must, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence shows that, on December 1, 2017, Commander Salami saw defendant pump gasoline into plastic gasoline cans in the trunk of his IDOC State-issued vehicle, which Salami found unusual. When Salami asked defendant what he was doing, defendant said he was taking the gasoline to someone in response to a call. Based upon his knowledge that IDOC contracts with CMS to deal with problems with the State's vehicles, Salami found defendant's explanation suspicious.

¶ 21    When Salami pressed defendant, asking for the name of the person who contacted defendant and identifying himself as an IDOC deputy commander, defendant asked Salami to give him a break and offered Salami the gasoline cans. Salami interpreted defendant's response to mean he wanted Salami to let the matter go and not report it. Investigator Haynes testified that defendant charged around $46 to his State-issued Wex card at the gasoline station on that date. She testified that the State provides Wex cards to state employees strictly to pay for maintenance for State-issued vehicles, such as for fuel or oil change charges, not for personal purchases.

¶ 22    The trial court expressly noted that it found Salami's testimony to be "very credible," and we must defer to that determination. *People v. Brown*, 2013 IL 114196, ¶ 48. Salami's credible testimony established defendant pumped gasoline into plastic cans in the trunk of his IDOC vehicle, rather than into the State-issued vehicle's gasoline tank, and he provided a suspect explanation that contradicted Salami's understanding of IDOC protocol. From this, the court could

reasonably infer that defendant falsely represented that he was pumping gas for State purposes, when he was actually taking it for another purpose, *i.e.*, personal use.

¶ 23    Haynes's testimony that defendant charged around $46 to his State-issued Wex card on the same date and at the same gasoline station where Salami saw him, allows for the reasonable inference that defendant used his Wex card to purchase the gasoline pumped into the cans in his trunk that were for personal use. Haynes further testified that state employees are not allowed to use their Wex cards to make personal purchases, supporting the conclusion that any Wex card purchase made by defendant for personal use rather than for his IDOC vehicle constituted theft from the State. Accordingly, there was sufficient circumstantial evidence to support that defendant knowingly obtained control (knowingly used his Wex card) over the State's property (State funds on the Wex card) by deception (falsely representing he was pumping the gasoline into his IDOC vehicle or for State purposes) with the intent to permanently deprive the State of the use or benefit of the property (keeping the gasoline bought on his Wex card for impermissible personal use). See *Perry*, 224 Ill. 2d at 337; see also *People v. Campbell*, 146 Ill. 2d 363, 379 (1992) ("Circumstantial evidence is sufficient to sustain a conviction if it satisfies proof beyond a reasonable doubt of the elements of the crime charged.").

¶ 24    Still, defendant asserts that it was just as reasonable to infer that the gasoline cans were intended for a legitimate purpose, such as his claim at sentencing that he wanted to have the gasoline available should his unreliable IDOC vehicle run out of gas. He also argues there was no evidence that he paid for the extra gasoline on his State-issued card rather than his personal credit card. Defendant made essentially these same "innocent explanation" arguments in his motion for a directed finding, and the trial court rejected them. "[I]n weighing evidence, the trier of fact is not

required to disregard inferences which flow normally from evidence before it [citation], nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt [citation]." *Id.* at 380. Thus, the fact that a defendant is able to put forth an alternate theory does not require the trial court to accept that theory. See *id.* The trial court, which was in a superior position to judge the evidence at trial, inferred that defendant was committing theft by deception rather than acting legitimately, and we cannot reject that judgment simply because defendant now offers another innocent explanation for his actions. We would have to draw inferences in defendant's favor and accept the most innocent explanation, which is contrary to the law. See *People v. Martin*, 2011 IL 109102, ¶ 15 ("We view the evidence in the light most favorable to the prosecution, and allow all reasonable inferences from that evidence to be drawn in favor of the prosecution.")

¶ 25    Defendant also argues there was no evidence of deception where he "readily answered Salami's questions about his name, position, and the purpose of the external gas." For purposes of the theft statute, deception is broadly defined to include creating or confirming another's impression which is false and which the offender does not believe to be true; failing to correct such false impressions; and preventing another from acquiring information pertinent to the disposition of the property involved. 720 ILCS 5/15-4(a), (b), (c) (West 2016).

¶ 26    Haynes testified that Wex cards are only permitted for State-approved purchases, and that defendant used his State-issued Wex card to make a purchase at the same gasoline station, on the same day, as when Salami saw defendant pump gasoline into a can in the trunk of an IDOC vehicle rather than into the vehicle's gasoline tank. When Salami questioned defendant about the suspicious conduct, defendant claimed he was bringing the gasoline to someone, but would not

tell Salami to whom, creating a false impression that he was acting properly and obscuring Salami's ability to acquire information pertinent to the disposition of the gasoline acquired with the State's funds. Salami testified that CMS handles IDOC vehicles, so defendant's explanation did not make sense to him. Moreover, after defendant learned Salami's name and position, defendant asked Salami to give him a break and offered Salami the gasoline cans, which Salami interpreted as a request to not report him for his violation. Therefore, it was not unreasonable for the trial court to infer that defendant used deception when he pumped gasoline, paid for by the State, into cans in the back of his IDOC vehicle for personal use.

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 28    Affirmed.